ASPOSITO v. SECURITY BENEFIT ASSN.

1. Insurance—Beneficial Associations—Waiver—Estoppel.
   Rules as to estoppel and waiver should not be as strictly invoked against fraternal beneficial association as against insurance company with capital stock, organized for profit.

2. Same—Reinstatement—Estoppel by Acts of Agent.
   Beneficial association is not estopped from denying liability on beneficiary certificate by fact that its local agent filled in false answers to questions in application for reinstatement in regard to assured's health without questioning him; especially where said application, signed by assured, contained positive statement, not in answer to any question, that he was in good physical condition, although he was then suffering from chronic disease three years old for which he had twice within month consulted physician, and which caused his death about a month later.

3. Same—Reinstatement—Recovery on Certificate.
   Where assured had no right to reinstatement in beneficial association under his contract because he was not in good health, denying recovery on beneficiary certificate takes away no right from him or beneficiary, because no such right existed.

Appeal from Superior Court of Grand Rapids; Verdier (Leonard D.), J. Submitted April 13, 1932. (Docket No. 96, Calendar No. 36,264.) Decided June 6, 1932.

Assumpsit by Grace Asposito against Security Benefit Association, a fraternal beneficiary society, as beneficiary under a beneficiary certificate. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and judgment ordered entered for defendant.

On criterion of health for purpose of conditions of reinstatement of insured, see annotation in 40 A. L. R. 667.

*Dunham, Taylor & Allaben,* for plaintiff.

*Joslyn, Joslyn & Joslyn,* for defendant.

Butzel, J.   On June 21, 1929, James Asposito applied for membership in the Security Benefit Association, a fraternal beneficiary society, defendant and appellant herein.   It has several hundred thousand members and numerous lodges and subordinate councils throughout the United States.   It has no capital stock, is not conducted for profit, has a representative form of government and ritualistic work. It is organized under the laws of Kansas, but has qualified in Michigan, where it maintains lodges and subordinate councils in many cities.   On June 25, 1929, Asposito became a member of the Grand Rapids council of the association, and received a beneficiary certificate for $2,000, payable, in the event of his death, to his wife, Grace Asposito, plaintiff herein.   He allowed the certificate to lapse, and at the end of July, 1930, was suspended for nonpayment of assessments and dues for the current month. He had taken out his original membership through one Charles Klein, a local agent of defendant.   On December 31, 1930, Klein visited plaintiff's home at her request, and, upon presentation of application for reinstatement, secured Asposito's signature. The application contains many pertinent representations and warranties of the applicant.   It states that the application is based upon the original application and medical examination submitted for membership in the association in addition to the warranties thereinafter made.   Among them is the unqualified statement that the applicant is in *"sound* physical and mental condition," and "a fit subject for life insurance."   Paragraph 4 of the blank application for reinstatement reads as follows:

"(a)   Since the date of my application ... on which my present benefit certificate ...w... issued, I have not been under the care of, or examined by, or consulted any physician or surgeon, except as follows: (Give above details of any injury or ailment, and name and address of any physician or surgeon.)

"(b) I have not undergone any surgical operation or been an inmate of any hospital, asylum or sanitarium since the date of my application ...., except as follows: ...... (Give details—when, where, what for, and results.)"

In paragraph 6, the applicant agrees that both the answers and the statements in the former application and in the present one are full, true, and correct, and shall be held to be strict warranties, and that any untrue statement or answer in either of them shall render the certificate null and void; that they shall be considered a part of any benefit certificate issued thereon; that they, together with the constitution and laws of the association, shall constitute applicant's contract for protection with the association.

The testimony shows that Klein wrote the answer "No," after each section of paragraph 4 hereinbefore quoted, without asking any questions of applicant, who signed the document as prepared and presented by Klein; that applicant asked whether it would be necessary for him to be examined by a physician and Klein told him that it would not. The record does not show that any facts whatsoever in regard to applicant's sickness were disclosed to Klein. The application was sent to the home office in Kansas, and a certificate of reinstatement was delivered to applicant on January 9, 1931. On the 5th day of the following month, he was operated upon for chronic cholecystitis, an infection of the gall

bladder, from which he had been suffering for three years. He died five days later. Notwithstanding that the proofs of death filed with defendant show that the immediate cause of death was pneumonia and the contributing cause was respiratory infection, the death certificate filed with the Michigan department of health shows that the principal cause of death and related causes of importance were as follows:.

"Septicemia, duration 3 days; septic infarct. Rt. lung following operation, duration 4 days. Other contributory causes of importance: Chronic Cholecystitis, duration 3 years. Chronic appendicitis, duration —— * * * Time of operation February 5, 1931. Condition for which performed, Chr. Cholecystitis. Organ or part affected chr. appendicitis."

The proofs of death also showed that assured had his tonsils removed at the hospital on August 16, 1930.

It is also shown by the testimony that a physician attended him again in September and twice in November. In September, 1930, he went to an X-ray specialist, who examined the abdominal cavity and found "a moderate degree of cholecystitis, and that the gastro-intestinal reactions are reflex to that condition." The record shows beyond any question that the assured was a sick man when he applied for reinstatement, and that material statements in the application for reinstatement were false. The sole question in the case is whether defendant is estopped from denying liability, or whether the fraud was waived, because its agent filled in the answer "No" to the questions in the application for reinstatement as hereinbefore indicated, without questioning assured and eliciting any information from him. We cannot overlook the fact that the application signed

by assured contained the positive statement, and not in answer to any question, that he was in good physical condition, although during the previous month he had twice consulted a physician for a chronic disease three years old, and that shortly thereafter necessitated an operation, from which death ensued. The by-laws of the association, which are a part of the contract, provide that the association shall not be bound by the acceptance of assessments and dues from suspended members who are not entitled to reinstatement in accordance with the laws of the association; that members may only be reinstated after 60 days upon filing proof of sound bodily and mental condition; that the association is not bound by knowledge of or notice to officers or members of subordinate councils, none of whom are authorized or permitted to waive any provisions of the laws of the association; and that under no circumstances may a beneficiary certificate be delivered to or assessment collected from any applicant who is not in good health.

Plaintiff refused to accept the return of the assessment paid by applicant upon reinstatement. She brought suit against defendant and recovered a verdict of $2,000, the amount of the certificate.

The trial judge, in submitting the case to the jury, stated that there was only one issue in the case; that if the jury found that the applicant truthfully answered the questions asked in the application for reinstatement, or that he was not asked them at all but that Klein answered them without asking the insured, then the plaintiff would recover; that if, on the other hand, applicant was asked the questions and he answered them untruthfully, and that as a result of such answers the defendant company issued the certificate, then plaintiff could not recover.

Plaintiff makes no claim that the applicant told Klein about his condition. The only question asked by applicant was whether it would be necessary to have a medical examination, and Klein answered "No."

The statute was invoked forbidding the giving of testimony concerning matters equally within the knowledge of the deceased (3 Comp. Laws 1929, § 14219), and Klein was not permitted to state what the applicant told him. We need not pass upon the claim that the rule should not have been applied in a case where the beneficiary, and not the estate of the deceased, is the opposite party, for decision rests on other grounds.

We find much confusion in the statement of the law as to the liability of an insurer when false statements have been made in the application for insurance through the fault or with the connivance of the insurer's agent. The decisions, however, rest so largely on varying facts that the ruling in one case may not be at all adaptable to the facts in another. Plaintiff relies on *Brown* v. *Metropolitan Life Ins. Co.*, 65 Mich. 306; *Temmink* v. *Metropolitan Life Ins. Co.*, 72 Mich. 388, and *Van Houten* v. *Metropolitan Life Ins. Co.*, 110 Mich. 682, in all of which the facts differ materially from those in the instant case. Defendant, in turn, relies on *American Ins. Co.* v. *Gilbert*, 27 Mich. 429; *Mudge* v. *I. O. F.*, 149 Mich. 467 (14 L. R. A. [N. S.] 279, 119 Am. St. Rep. 686); *Metropolitan Life Ins. Co.* v. *Freedman*, 159 Mich. 114 (32 L. R. A. [N. S.] 298); *Kane* v. *Detroit Life Ins. Co.*, 204 Mich. 357; *Bellestri-Fontana* v. *New York Life Ins. Co.*, 234 Mich. 424; and *Mutual Life Ins. Co.* v. *Geleynse*, 241 Mich. 659 (56 A. L. R. 702), in all of which the circumstances and facts differ from those presented to us in the case at bar.

The same difficulty is met in reviewing cases of other jurisdictions, where varying facts and in many instances statutes, cause what at first may seem a lack of harmony in decisions.

We are impressed with the rule as laid down in *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519 (6 Sup. Ct. 837), where the question arose as to the effect of an agent of the insurer writing into the application statements not made by insured. The court, in denying liability on the part of the insurer, said:

"But the case as presented by the record is by no means as favorable to him as we have assumed. It was his duty to read the application he signed. He knew that upon it the policy would be issued, if issued at all. It would introduce great uncertainty in all business transactions, if a party making written proposals for a contract, with representations to induce its execution, should be allowed to show, after it had been obtained, that he did not know the contents of his proposals, and to enforce it, notwithstanding their falsity as to matters essential to its obligation and validity. Contracts could not be made, or business fairly conducted, if such a rule should prevail; and there is no reason why it should be applied merely to contracts of insurance. There is nothing in their nature which distinguishes them in this particular from others. But here the right is asserted to prove not only that the assured did not make the statements contained in his answers, but that he never read the application, and to recover upon a contract obtained by representations admitted to be false, just as though they were true. If he had read even the printed lines of his application, he would have seen that it stipulated that the rights of the company could in no respect be affected by his verbal statements, or by those of its agent, unless the same were reduced to writing and forwarded

with his application to the home office. The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. *It must be presumed* that he read the application, and was cognizant of the limitations therein expressed."

Again in *Maier* v. *Fidelity Mutual Life Ass'n,* 24 C. C. A. 239 (78 Fed. 566), Mr. Justice Harlan, speaking for the court, said:

"It was said in argument that the company should not be permitted to take advantage of the misconduct or wrong of its own agent. But the law did not prohibit the company from taking such precautions as were reasonable and necessary to protect itself against the frauds or negligence of its agents. If the printed application used by it had not informed the applicant that he was to be responsible for the truth of his answers to questions, and if the want of truth in such answers were wholly due to the negligence, ignorance, or fraud of the soliciting agent, a different question would be presented. But here the accused was distinctly notified by the application that he was to be held as warranting the truth of his statements, 'by whomsoever written.' Such was the contract between the parties, and there is no reason in law or in public policy why its terms should not be respected and enforced in an action on the written contract. It is the impression with some that the courts may, in their discretion, relieve parties from the obligations of their contracts, whenever it can be seen that they have acted heedlessly or carelessly in making them. But it is too often forgotten that in giving relief, under such circumstances, to one party, the courts make and enforce a contract which the other party did not make or intend to make. As the assured stipulated that his statements, which were the foundation of the ap-

plication, were true, *by whomsoever such statements were written, and as the contract of insurance was consummated on that basis,* the court cannot, in an action upon the contract, disregard the express agreement between the parties, and hold the company liable if the statements of the assured—at least, those touching matters material to the risk— are found to be untrue.''

The rules as to estoppel and waiver should not be as strictly invoked against a fraternal beneficial association as against an insurance company with capital stock, organized for profit. In a statement found in *Field* v. *National Council of Knights & Ladies of Security,* 64 Neb. 226 (89 N. W. 773) (cited in *Larkin* v. *Modern Woodmen of America,* 163 Mich. 670), the court said:

''The doctrine of waiver, which is often appealed to to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders (fraternal beneficiary societies). The laws and rules governing the different branches of such an order are in the nature of contracts among all the members, and, considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy that, in cases of this kind, their rules and regulations should be substantially upheld by the judicial courts.''

Again in *Bratley* v. *Brotherhood of American Yeomen,* 159 Minn. 14 (198 N. W. 128), the court said:

''The record forces us to the conclusion that the district deputy is an agent whose principal duty is to solicit and receive applications for membership

which are to be turned over to other officials who will decide whether or not the corporation will make a contract of insurance with the applicant. Certificates are issued only to members. There can be no members until they are approved by the chief medical director. No contracts of insurance are authorized except in writing and signed by certain officers. The provisions against waiver are very broad, but should well apply to a district deputy. Such deputies are not endowed with any general authority which would permit them to depart from the by-laws. We think an agent of a corporation, which has its contractual power so wisely restricted as disclosed by the by-laws of the defendant, has no power to make insurance contracts for his principal; and, if not, we conclude that he cannot effectually waive the falsehood in this application. The deputy being unauthorized to make the contract imputed to him in this transaction, his knowledge is of minor importance under the facts in this case. The agent here has much the same standing·as the agent in *Louden* v. *Modern Brotherhood of America,* 107 Minn. 12 (119 N. W. 425). * * *

"Recognizing the type of the agency of the deputy, his knowledge of the false statements would not prevent the insurer taking advantage of such statement."

In *Koehler* v. *Modern Brotherhood of America,* 160 Mich. 180 (136 Am. St. Rep. 424), the laws of the fraternal order provided that an insured could not be reinstated unless he was in good health, and, as the opinion stated, assured "had no right to reinstatement for he was not in good health." In the present case, the assured was *not* in good health and he had no right to reinstatement under his contract. There is every indication that he must have known of his sickness. Denying recovery does not

take away any right of assured or plaintiff, as such a right never existed.

Under the facts of the particular case, we are constrained to reverse the judgment of the lower court, and remand, with directions to enter a judgment for defendant.

Clark, C. J., and McDonald, Potter, Sharpe, North, Fead, and Wiest, JJ., concurred.