BRASIER *v.* BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES.

1. Insurance—Health and Accident Policy—Muscular Atrophy —Findings of Court—Evidence.

Proofs in insured's nonjury action under health and accident insurance policy *held,* to support trial court's finding that plaintiff's disability was due to injuries received in an automobile accident and not to muscular atrophy, a condition that was of long standing, was static, and apparent to the physician who examined plaintiff before the policy was issued and discussed plaintiff's condition with him at the time of the examination but made no statement concerning it in his report.

2. Same—Examining Physician.

An insurance company may not, by the stratagem of maneuvering an applicant into mentioning a doctor's name, disavow such doctor as its agent and close its corporate ears and eyes to facts openly imparted to that doctor at the examination of the applicant.

References for Points in Headnotes

[1] 29A Am Jur, Insurance §§ 1046, 1212.
[2, 3, 4, 6] 29A Am Jur, Insurance § 1046.
[5] 29A Am Jur, Insurance § 1020.

3. SAME—EXAMINING PHYSICIAN—PRINCIPAL AND AGENT.

Evidence presented in insured's nonjury action under health and accident insurance policy *held*, sufficient to establish, in accord with the trial court's finding and the universal practice, that the doctor who had examined plaintiff, as an applicant for such insurance, was acting as the insurer's agent, and not as the agent of the applicant.

4. SAME—MEDICAL EXAMINER—PRINCIPAL AND AGENT.

Direction to the medical examiner of applicant for insurance, contained in the application, that the examiner put the following questions and fill out the answers in his own handwriting clearly makes the examiner the agent of the insurer for that purpose.

5. SAME—APPLICATION—ESSENTIAL INFORMATION CONVEYED TO INSURER'S AGENT.

Essential information which is imparted to any agent of the insurer by an applicant at the time of applying for insurance will be imputed to the insurer.

6. SAME—MEDICAL EXAMINER AS AGENT OF THE INSURER.

A medical examiner is the agent of the insurer in making the examination of the applicant in taking down the answers and reporting them to the insurer, and his knowledge thus acquired, his interpretation of the answers given, and his errors in recording them, are the knowledge, interpretation, and errors of the insurer.

Appeal from Genesee; Roth (Stephen J.), J. Submitted November 9, 1962. (Calendar No. 70, Docket No. 49,747.) Decided February 6, 1963.

Action by Elwyn F. Brasier against Benefit Association of Railway Employees, a foreign corporation, for sums due under terms of health and accident insurance policy. Judgment for plaintiff. Defendant appeals. Affirmed.

*Herbert J. Booth* and *Herbert A. Milliken, Jr.,* for plaintiff.

*Gault, Davison & Bowers* (*Philip M. Ambrose,* of counsel), for defendant.

DETHMERS, J. Plaintiff was injured in an automobile accident and became disabled. During the 4 succeeding months defendant insurer paid him $300 per month, and also his medical expenses, in accord with the terms of a health and accident insurance policy which it had issued to him 13 months before the accident. Then defendant refused to make further payments, advised plaintiff that it was rescinding the policy, tendered to him the premiums he had paid and demanded his return of the benefits previously paid to him under the policy. The grounds asserted by defendant for such action were that, in his application for insurance and in the medical examination made in that connection, plaintiff had concealed from defendant a material fact about his physical condition, namely that he suffered from muscular dystrophy or atrophy.

Plaintiff sued to enforce the insurance contract and for continuing payments of $300 per month to him thereunder, claiming total and permanent disability resulting from the accident. Defendant defended on the ground that plaintiff had secured the insurance contract through the mentioned concealment, rendering it voidable, and filed a cross declaration for recovery of the benefits paid under it less a credit for the premiums plaintiff had paid. From judgment for plaintiff, defendant appeals.

The pretrial statement contained the following:

*"The Court:* This is an action on a health and accident policy on a claim for benefits as a result of an accident in January, 1959.

"The defense is based upon a claim of concealment or fraud in the application for insurance.

"The issues appear to be as follows: (1) Did the plaintiff have muscular dystrophy or muscular atrophy at the time of his application for coverage? (2) Did the plaintiff conceal such condition if it existed? (3) Did he become disabled within the

meaning of the policy?   (4) Was the disability attributable to muscular dystrophy or muscular atrophy? * * *

"It is agreed by counsel that the pertinent paragraph of the application involving the issues between the parties is paragraph 12. * * *

"It is conceded by the defendant that a Dr. Slade examined the plaintiff on their behalf in connection with his application for coverage."

Paragraph 12 of the application reads as follows:

"12. Have you received any other medical or surgical advice or treatment or had any local or constitutional disease WITHIN THE LAST FIVE YEARS?

"None except acc.

"Date? 1957 for? accident lasting? 30 days."

With the application there was an instrument on which, at the beginning, appears the language "Medical Examiner's Report—(To Be Filled Out in Private)." On the report there follow a number of printed questions with answers penned in, a blank for signature of "Agent Requesting Examination", duly filled in, and a certification by Dr. H. F. Slade, M.D., as the "Medical Examiner" which, when submitted at trial as 1 of defendant's exhibits, was followed by the notation "Ex. Pd. $7.50 12-27-57 J. K." It contained no statement about muscular atrophy.

Although defendant's answer also alleged that plaintiff's disability was not due to injuries sustained in the automobile accident but to a pre-existing condition of muscular dystrophy or atrophy, that is no longer urged on this appeal. The trial court found, as the proofs show, that plaintiff is not and has not been afflicted with muscular dystrophy but only with muscular atrophy and that his disability is not due to that but to the accident.

The opinion of the trial court contains the following:

"The evidence supports the finding that plaintiff's condition of muscular atrophy was apparent and readily ascertainable to the examining physician; and that such atrophy was the result of an attack of diphtheria which the plaintiff suffered in 1919, while in the army. The medical application discloses that this history was given by the applicant in answer to question 9:

"'discharged because brachial neuritis because diphtheria 1919.'

"The evidence further supports the finding that the muscular atrophy was of long standing and, so far as plaintiff knew, it was static and had been for years upwards of 5 before his application. In view of the fact that the atrophy was of long standing, that it was static, and that it must have been apparent to the examining physician, it cannot be said that plaintiff made a false statement or that he concealed his condition."

The proofs support the above finding. Dr. Slade, the examining physician, discussed plaintiff's condition of muscular atrophy with him at the time of the examination, and its existence was obvious to the doctor at the time. Question is raised, however, as to whether the examining physician was the agent of defendant, so as to charge it with knowledge of what was known to him, or the agent of plaintiff because the latter had some part, with defendant's insurance salesman, in selecting that doctor to make the examination. On that, plaintiff testified on direct examination as follows:

"*Q.* How did you happen to go to Dr. Slade for an examination?

"*A.* If I recall correctly, they asked me if I had any particular doctor, and I said no, and he said was I acquainted with anybody in Saginaw. I named

several doctors that I knew and he picked out Dr. Slade.

"*Q.* Now did it happen that Dr. Slade had known you before this examination?

"*A.* Well, to a certain extent. I have never had any professional contact with him, but we happen to go to the same church.

"*Q.* How long had he been acquainted with you in that manner before this examination?

"*A.* I think I'd seen him in church probably a dozen times."

On cross-examination he testified:

"*Q.* Now when you were told by the company and you were told by the company to get a physical, isn't that correct?

"*A.* That's right.

"*Q.* Or by a representative of the company?

"*A.* Their agent.

"*Q.* And who picked out Dr. Slade?

"*A.* Well, I mentioned 2 or 3 doctors that I had met.

"*Q.* Well, didn't you pick out Dr. Slade?

"*A.* And he said that any 1 of them was okay.

"*Q.* So you picked out Dr. Slade yourself?

"*A.* Well, I said he could pick him out or it wouldn't make any difference to me.

"*Q.* Yes.

"*A.* I don't remember whether I picked him out or he picked him out, but there was no particular difference as far as I am concerned.

"*Q.* So you could have picked out Dr. Slade yourself. Isn't that true?

"*A.* It's possible. I don't remember."

Plaintiff has well said in his brief:

"For an insurance company should not be able by the sly stratagem of maneuvering an applicant into mentioning a doctor's name, to disavow such doctor as its agent and close its corporate ears and eyes to facts openly imparted to this doctor."

At pretrial defendant conceded that Dr. Slade had acted on its behalf in examining plaintiff. It's mentioned exhibit, being the doctor's report to it, contains a notation fairly indicating defendant's payment of the doctor for the examination. The form also contains directions to the doctor to fill it out in private and certify to his examination of plaintiff and it names defendant's salesman as the "Agent Requesting Examination." We think this sufficient to establish, in accord with the trial court's finding and as is the universal practice, that the examining doctor was acting as defendant's agent, not the agent of plaintiff.

"The application says: 'The medical examiner will put the following questions and fill out the answers in his own handwriting.' This clearly makes the examiner the agent of the company for this purpose. The insured could not write his answers if he would. The company takes this part of the application out of the hands of the applicant and writes the answers as with its own hand." *Leonard* v. *New England Mutual Life Insurance Co.*, 22 RI 519, 522 (48 A 808).

"When it is shown that a participant—medic or not—in the obtaining or filling out of an application for life insurance is in fact an agent of the insurer, essential information shown as having been imparted to such agent will be imputed to the insurer according to rules given in *Pitcher* v. *World Insurance Company*, 327 Mich 520; *Turner* v. *Mutual Benefit H. & A. Assn.*, 316 Mich 6; *Serbinoff* v. *Wolverine Mutual Motor Insurance Co.*, 242 Mich 394; *Hawkeye Casualty Co.* v. *Holcomb*, 302 Mich 591, and like cases." *Hughes* v. *John Hancock Life Insurance Company*, 351 Mich 302, 310.

"The weight of authority is that the medical examiner is the agent of the insurer in making the examination, taking down answers and reporting them to

the company; that his knowledge thus acquired, his interpretation of the answers given, his errors in recording them are the knowledge, interpretation and errors of the company itself." *Mann* v. *Policy-holders' National Life Insurance Co.,* 78 ND 724, 740 (51 NW2d 853.)

The trial court correctly held that plaintiff did not conceal his condition from defendant or obtain the insurance through misrepresentation.

Affirmed. Costs to plaintiff.

Carr, C. J., and Kelly, Black, Kavanagh, Souris, and Otis M. Smith, JJ., concurred.

O'Hara, J., took no part in the decision of this case.