Barbara L. MANNINO, Plaintiff,

v.

DOMINION LIFE ASSURANCE COMPANY, Minnesota Mutual Life Insurance, and Pacific Mutual Life Insurance Company, Defendants.

Civ. A. No. 81–70539.

United States District Court,
E. D. Michigan, S. D.

May 11, 1982.

Thomas H. Oehmke, Oehmke Legal Associates, Detroit, Mich., for plaintiff.

Mark E. Straetmans, Detroit, Mich., for Minnesota Mut.

MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR REHEARING AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JULIAN ABELE COOK, Jr., District Judge.

Plaintiff filed a Complaint with the Oakland County (Michigan) Circuit Court on January 23, 1981, alleging that Defendants had wrongfully refused to pay death benefits after the death of her husband, Alexander Charles Mannino, Jr. [Mannino], whose life had been insured by each of them. The

present case was removed to this Court on February 19, 1981. On September 17, 1981, Defendant, Dominion Life Assurance Company, filed a Motion for Summary Judgment which was granted on December 28, 1981. Defendant, Pacific Mutual Life Insurance Company, was dismissed from the present case pursuant to a Stipulation which was filed with the Court on February 16, 1982. On February 23, 1982, Defendant, Minnesota Mutual Life Insurance Company [Minnesota Mutual], filed a Motion for Summary Judgment which was denied on March 24, 1982. On April 2, 1982, Minnesota Mutual filed a Motion for Reconsideration with the Court. Plaintiff filed Objections to Minnesota Mutual's Motion for Reconsideration on April 18, 1982. The Motion is now before this Court for a decision.

Minnesota Mutual argues that the denial of its Motion for Summary Judgment was conditioned upon Plaintiff filing an amended affidavit of Robert Mondor [Mondor] who would set forth his familiarity with Minnesota Mutual's underwriting procedures. Minnesota Mutual argues that its Motion should be reconsidered because Plaintiff failed to file the Mondor affidavit within the time period (to wit, seven days) as directed by the Court. Minnesota Mutual's argument is based upon its belief that "a substantial basis for the Court's decision on its Motion for Summary Judgment was the expected amended affidavit of (Mondor), setting forth his personal knowledge that [Minnesota Mutual] might have issued a rated policy" to Mannino had it received accurate responses from him in its application questionnaire. Minnesota Mutual argues that the Court should (1) grant its Motion for Reconsideration, and (2) on the basis of the "uncontroverted" affidavits of Richard Gribstad [Gribstad], Underwriting Supervisor in the Group Underwriting Department of Minnesota Mutual, grant its Motion for Summary Judgment.

Although conceding that she did not file the requested Mondor affidavit with the Court, Plaintiff now asserts that "the parties have agreed that a genuine issue of material fact exists as to the issue of material misrepresentation." Thus, Plaintiff argues that the Court should not alter its earlier determination with respect to Minnesota Mutual's Motion for Summary Judgment because there exists a genuine issue of material fact which should be left for resolution by a jury.

Local Rule 17(j) provides that "(o)ral hearings on (motions such as the one presently before the Court) shall be permitted unless the Judge at any time prior to the hearing orders their submission and determination without oral hearing on the briefs filed as required by this Rule." Inasmuch as an oral argument on the present Motion for Reconsideration would not facilitate a resolution of the issues which are presently pending, the Court will dispense with oral argument and resolve the issues before it on the briefs with the Court to date.

Local Rule 17(k) guides this Court in determining whether to grant motions for rehearing or reconsideration. The Rule provides, in pertinent part, that "generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof."

The Court is of the opinion that Minnesota Mutual, in its Motion, has raised an issue that had not been previously ruled upon; to wit, whether the Court would have granted the Motion for Summary Judgment in the absence of Plaintiff's representations (which were made during oral argument) that an affidavit from Mondor would demonstrate his familiarity with the Minnesota Mutual underwriting practices. Minnesota Mutual has satisfactorily demonstrated that there may exist "a palpable defect by which the Court and the parties have been misled," and "that a different disposition of the case (might) result from a correction thereof." Therefore, the Court will (1) grant Minnesota Mutual's Motion

for Rehearing, and (2) review its earlier denial of Minnesota Mutual's Motion for Summary Judgment.

Minnesota Mutual filed its Motion for Summary Judgment on February 23, 1982, asserting that, on April 11, 1980, Mannino had "clearly represented that he had not been hospitalized nor had he consulted with a physician during the three years prior to signing [an] application for coverage." Minnesota Mutual further asserted that "the office records of Dr. D. A. Paris [Paris], the office records of Dr. George Mogill, M.D. [Mogill], and the Plaintiff's own interrogatory answers all indicate that (Mannino) consulted with physicians on numerous occasions during the three years prior to his April 11, 1980 application for coverage." Minnesota Mutual asserted that the records of Mogill reveal at least six consultations during the period in question, and the records of Paris indicate at least one consultation during the same period of time. Based on these assertions, Minnesota Mutual argues that it would not have issued the subject insurance policy in the absence of Mannino's material misrepresentations in his application for coverage.

In support of its Motion for Summary Judgment, Minnesota Mutual filed two affidavits of Gribstad with the Court. In his first affidavit, Gribstad stated, in part:

2. That he has reviewed the application of (Mannino) for mortgage life insurance dated April 11, 1980 and received by the Group Underwriting Department at (Minnesota Mutual) on April 25, 1980.

3. That he has also reviewed the office records of (Paris) in which are included the records of the Cottage Hospital Emergency Room dated November 4, 1976, and has also reviewed the records of (Mogill). These records contain consultation and treatment notes relating to (Mannino's) medical history from November 4, 1976 through April 25, 1980, the date the Group Underwriting Department at (Minnesota Mutual) received the application.

4. That although (Mannino) answered "no" to question no. 1 on the application, which inquired whether the applicant had been hospitalized or had consulted a physician or physicians for any reason during the three years preceding the application date, the medical records reviewed revealed that (Mannino) had consulted (Mogill) on at least six dates during that period, and had consulted (Paris) on one occasion during that period.

5. That had (Mannino) revealed on the application in answer to question no. 1 that he had consulted (Mogill) in September 1978, April 1979, June 1979, August 1979, February 1980 and March 1980 for a physical examination, herpes infection and pulmonary function tests and that he had consulted (Paris) on March 12, 1979 for depression, (Minnesota Mutual's) underwriters would have written to both (Mogill) and (Paris) for their records on (Mannino).

20. That the lowest possible rating (Mannino) could have obtained based upon the records of (Mogill) and (Paris) would have been 230%:

| | | |
|---|---|---|
| standard rating | = | 100% |
| depression | = | 100% + |
| chronic obstructive pulmonary disease | = | 30% + |
| | | 230% + |

21. That since (Mannino's) medical history would have rated above the 200% acceptable limit for the coverage for which he applied, (Minnesota Mutual) would have declined to issue such coverage had the Company been made aware of the medical history.

In a Supplemental Affidavit, which was filed on March 23, 1982, Gribstad asserted that the underwriting policies of Minnesota Mutual would have precluded issuance of the subject insurance policy to Mannino (1) even though only one of his two mental depressions occurred within a two year period of the insurance application, and (2) de-

spite any indications that the pulmonary problems, which he suffered, had improved.

Plaintiff contends that the Court should deny Minnesota Mutual's Motion for Summary Judgment because there exist genuine issues of material fact with regard to two questions:

(1) Whether Mannino made any material misrepresentations in his several responses to Minnesota Mutual's application questionnaire, and

(2) Whether a "rated policy" would have been issued to Mannino under the standard practice of the insurance industry.

Plaintiff asserts that a genuine issue as to whether a misrepresentation exists because there is no indication that Mannino was ever advised that he had a disorder of the type which was listed in question no. 2 of the questionnaire.

Plaintiff further asserts that there exists a genuine issue as to whether the misrepresentation, if any, was "material," contending that Mogill and Dr. Alan Rosenbaum [Rosenbaum], whose affidavits are attached to Plaintiff's Supplemental Brief, would have applied Minnesota Mutual's underwriting guidelines differently than Gribstad. She asserts that Gribstad has used "the pertinent table . . . incorrectly to reach his desired conclusion of materiality . . ." and that "(t)he highest possible rating that decedent could have obtained, based upon the relevant records of (Mogill) and (Paris), would have been 125%."

Plaintiff initially contended that this Court should exercise its equitable powers to "reform" the contract because Minnesota Mutual might have issued a rated policy had it been made aware of Mannino's medical condition. However, Plaintiff has withdrawn the issue, having been unable to produce any legal argument in support of her contention that the Court has any power to modify the insurance contract in the manner suggested.

In determining whether to grant a Motion for Summary Judgment, the Court must determine whether there exists any genuine issue of a material fact. *Fed.R. Civ.P.* 56(e) reads, in part, "(w)hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The Court is of the opinion that Mannino made a "misrepresentation" in his application for insurance benefits. "Misrepresentation" was defined by the law of the State of Michigan as follows:

A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false. M.C.L.A. § 500.-2218(2).

The affidavit of Gribstad, when evaluated along with the application questionnaire, as well as the Mogill and Paris records, suggest that Mannino made a "misrepresentation" when he answered "no" in response to question number 1 (to wit, "During the last three years, have you been hospitalized or have you consulted a physician or physicians for any reason?") It is not necessary, as Plaintiff contends, that a misrepresentation be made knowingly, or with intent to defraud in order for the misrepresentation to serve as a basis for voiding the policy which was procured as a result thereof. *See Manufacturer's Life v. Beardsley,* 365 Mich. 308, 310, 112 N.W.2d 514 (1961); *National Life & Accident Insurance Company v. Nagel,* 260 Mich. 635, 245 N.W. 540 (1832).

In order for Minnesota Mutual to prevail on the pending Motion for Summary Judgment, this Court must also determine that Mannino made a material misrepresentation

when he applied for insurance coverage. Materiality has been defined by the State of Michigan as:

> No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless the misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make the contract.
>
> In determining the question of materiality evidence of the practice *of the insurer which made the contract* with respect to the acceptance or rejection of similar risks shall be admissible. M.C.L.A. § 500.2218 (emphasis added).

■ Thus, an examination by this Court will be confined to determining if Minnesota Mutual, upon its receipt of correct responses to Questions 1 and 2, would have issued the policy to Mannino. It is not relevant to this inquiry that other insurance companies might have, or would have, issued a policy of insurance to Mannino. Evidence that other insurance companies may have applied Minnesota Mutual's underwriting manual in a different manner, or that certain physicians, in making marks on medical records, did not mean to suggest that certain severe conditions were present, is irrelevant at this point. This Court must ask whether this insurance company would have issued the policy that has been sued upon in the absence of certain misrepresentations by Plaintiff's deceased husband.

Gribstad's affidavit sets forth the steps that Minnesota Mutual would have taken in order to determine whether to issue a policy to Mannino if he had answered "yes" to either Question 1 or 2. He stated that the underwriting policies and procedures of Minnesota Mutual would have precluded coverage on the basis of the medical records which Minnesota Mutual would have reviewed upon its receipt of correct answers to Question(s) 1 and/or 2. Gribstad's assertions, if uncontroverted, would entitle Minnesota Mutual to Summary Judgment as a matter of law.

Plaintiff, in arguing that Gribstad has incorrectly applied Minnesota Mutual's underwriting policies, has filed affidavits of physicians who suggest that Mannino was in reasonably good physical condition at the time of his application for insurance coverage. However, Plaintiff has failed to present any evidence, outside of unsupported assertions, that Minnesota Mutual would have issued the insurance policy even if it had been accurately apprised of the true facts which were requested by Questions 1 and 2. She also contends that certain marks on Mannino's medical records should not be evaluated by the Court in the manner, as suggested by Gribstad. However, Plaintiff has utterly failed to show, to the satisfaction of this Court had Mannino answered Questions 1 and 2 correctly, that Minnesota Mutual would not have denied coverage to him.

This Court is aware of the difficult burden that is placed upon an individual who seeks to recover on a policy of insurance in a case such as the present one. However, inasmuch as Michigan has made the meaning of "materiality" turn on subjective considerations, a Plaintiff must produce evidence, in the form of affidavits or otherwise, which suggests that the insurance company would have issued the policy had the correct information been provided. In the present case, Plaintiff might have elected to determine whether Minnesota Mutual had ever issued a policy, which was similar to the subject contract, under similar factual circumstances. But having elected not to seek that discovery, and, instead, having insisted on proceeding as though an objective standard governed the meaning of "materiality" (i.e., whether any insurance company would have issued any coverage to Mannino), Plaintiff cannot survive Minnesota Mutual's Motion for Summary Judgment.

The Court is of the opinion that Minnesota Mutual's Motion should be granted because (1) Plaintiff's deceased husband made a material misrepresentation in applying for the policy on which Plaintiff seeks to recover, and (2) Minnesota Mutual, under the circumstances, as outlined above, would

not have issued the subject insurance policy to Mannino.

IT IS HEREBY ORDERED that Minnesota Mutual's Motion for Reconsideration shall be, and is, granted.

IT IS FURTHER ORDERED that Minnesota Mutual's Motion for Summary Judgment shall be, and is, granted.

### JUDGMENT

This Court, having entered a Memorandum Opinion Granting Defendant's Motion for Rehearing and Granting Defendant's Motion for Summary Judgment on May 11, 1982, now enters a Judgment in accordance with *Fed.R.Civ.P.* 58.

IT IS HEREBY ORDERED that Judgment be entered in favor of Defendant, Minnesota Mutual Insurance Company and against Plaintiff, Barbara L. Mannino.