**Houda MAKKI, Individually and on behalf of the estate of Mohamad A. BAGHDADI, Plaintiff–Appellant,**

v.

**FARMERS NEW WORLD LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 01–1197.

United States Court of Appeals, Sixth Circuit.

Oct. 9, 2002.

Before SILER, COLE, and CLAY, Circuit Judges.

**OPINION**

COLE, Circuit Judge.

Plaintiff Houda Makki, on behalf of herself and her deceased husband, Mohamad

A. Baghdadi, appeals the grant of summary judgment to Defendant Farmers New World Life Insurance Company ("Farmers") on its claims relating to Farmers' denial of coverage under the $100,000 life insurance policy on Baghdadi, based on alleged misrepresentations in the insurance application. For the following reasons we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

In December 1994, Mohamad A. Baghdadi; his wife, Houda Makki; and their son came to the United States from Lebanon. They entered the country using a forged visa that Baghdadi purchased from his cousin for $3,000. Several years later, the Immigration and Naturalization Service ("INS") became aware of Baghdadi's fraudulent entry into the country and scheduled an immigration hearing for January 16, 1996. He did not appear for that hearing. Accordingly, an order of deportation issued. Baghdadi received notice of his ordered deportation, which was to occur on October 30, 1997. He retained an attorney to attempt to reopen the proceedings. In a decision dated November 25, 1996, the hearing officer denied the motion to reopen. Thus, a warrant of removal/deportation was entered against Baghdadi on September 2, 1997. A notice of deportation was sent to Baghdadi ordering him to report for deportation on October 30, 1997, in Detroit, Michigan. Baghdadi did not report for deportation.

A year after the warrant had been issued against him, Baghdadi and his family still remained in the United States. On October 19, 1998, Baghdadi applied for a life insurance policy from Farmers' New World Life Insurance ("Farmers") for $100,000. Farmers' agent, Mirvat Kadouh, read the questions on the life insurance application to Baghdadi and recorded his answers. Among those questions, two are relevant to this action. Question No. 11 followed up on Question No. 10, which asked if all proposed insureds are United States citizens. If not, Question No. 11 asked for the name of the non-citizens, how long they had lived in the United States, and for a "visa number/type" or a "permanent alien registration card number." Baghdadi's application reflects his name, four years as the length of time he had resided in the United States, and "A73488257," his INS case file number, as his permanent alien registration card number. It is not disputed that Baghdadi had no permanent alien registration number and at that time had been under a deportation order for over a year. The second relevant question was Question No. 2, inquiring whether the insured intended to work or travel outside of the United States for more than 30 days, to which Baghdadi responded "no." The insurance application bears Baghdadi's signature indicating that to his knowledge the statements and answers on the application were true and complete.

On December 18, 1998, Baghdadi was killed in an automobile accident while visiting Canada. His wife, Makki, submitted a claim to Farmers under the life insurance policy. In response to the claim, Farmers investigated and discovered that Baghdadi was not a permanent alien but in the United States illegally, and denied coverage based on that alleged material misrepresentation in Baghdadi's application. Farmers returned to Makki all premiums paid on the policy.

Makki brought this action on behalf of her deceased husband and herself against Farmers in Michigan Circuit Court. Farmers removed the case to the Eastern District of Michigan based on the parties'

diversity. Applying Michigan law,[1] the district court granted summary judgment to Farmers on all of Makki's claims and dismissed the action. Makki filed a timely notice of appeal to this court.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*, using the same standard employed by the district court. *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 307–08 (6th Cir.2001). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, this Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Herman Miller, Inc.*, 270 F.3d at 308.

### B. Analysis

#### 1. *Breach of Contract*

Makki alleges that Farmers breached the insurance contract by not paying her claim; Farmers responds that it was entitled to rescind the contract because Baghdadi materially misrepresented his immigration status on the insurance application.

Under Michigan law, a material misrepresentation contained in an application for insurance is grounds for rescission by the insurer. Mich. Comp. Laws Ann. § 500.2218; *Wiedmayer v. Midland Mut. Life Ins. Co.*, 414 Mich. 369, 324 N.W.2d 752, 754 (Mich.1982). Materiality is satisfied when the misrepresentation was an

"inducement" for the issuance of the policy; that is, the misrepresentation is material if the insurer would have denied the application if there had been a truthful disclosure. *See* Mich. Comp. Laws Ann. § 500.2218(1), (3); *Wickersham v. John Hancock Mut. Life Ins. Co.*, 413 Mich. 57, 318 N.W.2d 456, 458–59 (Mich.1982).

The materiality of the alleged misrepresentation is not at issue here. Makki does not contest Farmers' evidence that, pursuant to its underwriting guidelines, Farmers would not have issued a policy to an alien who did not have permanent resident status. Instead, Makki argues that the materiality issue is irrelevant because there was no misrepresentation.

"Misrepresentation" is defined by Michigan law as follows:

A representation is a statement as to past or present fact, made to the insurer by or by the authority of the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

Mich. Comp. Laws Ann. § 500.2218(2). It is not necessary that the misrepresentation be made knowingly, or with intent to defraud, in order for the misrepresentation to serve as a basis for voiding the policy which was procured as a result thereof. *See Mfrs. Life Ins. Co. v. Beardsley*, 365 Mich. 308, 112 N.W.2d 514, 515 (Mich. 1961); *Nat'l Life & Accident Ins. Co. v. Nagel*, 260 Mich. 635, 245 N.W. 540 (Mich. 1932); *see also Mannino v. Dominion Life Assurance Co.*, 539 F.Supp. 323, 326 (E.D.Mich.1982) (applying Michigan law). Essentially, the standard is strict liability even for innocent misrepresentations.

---

1. The parties agree that Michigan law governs this case.

Therefore, it would be no defense that Baghdadi did not realize that his INS number was not the same as a permanent alien registration number.

Further, an applicant for insurance has a duty to read what he submits to the insurance company. If the applicant signs an application, knowledge of the contents are imputed to him. *Asposito v. Sec. Benefit Ass'n*, 258 Mich. 507, 243 N.W. 37, 38–39 (Mich.1932). Where a misrepresentation has been placed in an insurance application by the insurer's agent, and the insured signs the application, the insured cannot disclaim the misrepresentation on the grounds that he had not read the application before signing it. *See Clark v. John Hancock Mut. Life Ins. Co.*, 180 Mich.App. 695, 447 N.W.2d 783, 784 (Mich. Ct.App.1989); *see also Jones v. Allstate Life Ins. Co.*, No. 93–1102, 1994 WL 28575, at *4 (6th Cir. Jan.31, 1994) (unpublished).

However, Michigan law does provide a few narrow exceptions to the rule that insureds are held to strict liability for misrepresentations to which they affix their signature. One such exception is that a misrepresentation in an insurance application will be imputed to the insurer when an agent erroneously construes or "interprets" a question or response to a question on an insurance application. *See Lipsky v. Wash. Nat. Ins. Co.*, 7 Mich.App. 632, 152 N.W.2d 702, 704–05 (Mich.Ct.App.1967) ("[I]nformation imparted to an insurance agent is imputed to the insurer, and the insurer is bound by the interpretation placed on the applicant's statement by the insurance agent."); *see also Brasier v. Benefit Ass'n of Ry. Employees*, 369 Mich. 166, 119 N.W.2d 639, 642 (Mich.1963) ("The weight of authority is that the medical examiner is the agent of the insurer in making the examination, taking down answers and reporting them to the company; that his knowledge thus acquired, his interpretation of the answers given, his errors in recording them are the knowledge, interpretation and errors of the company itself."); *Prudential Ins. Co. of Am. v. Cusick*, 369 Mich. 269, 120 N.W.2d 1, 10 (Mich.1963) (remanding for testimony of insurance agent to determine "whether agent [ ] manifestly commission-interested in a sale, did or did not 'select' or 'interpret' for written answer what Miss Cusick did in fact tell him").[2]

It is through this narrow "interpretation" exception that Makki attempts to pass. Makki cites an affidavit from Farmers' agent, Kadouh, in which Kadouh states that she asked Baghdadi "whether he had an alien registration number." J.A. at 168. Kadouh also states in the affidavit that "I did not, at any time, make any inquiry as to whether Mr. Baghdadi's alien registration number was a permanent alien registration number or a temporary number because I was not aware of any such distinction." J.A. at 168. The affidavit goes on to state that Baghdadi never represented to Kadouh that he was a permanent resident alien or had been issued a permanent alien registration number, and that Kadouh did not believe that such information was necessary to issue the policy. J.A. at 169. Makki argues that this affidavit raises a genuine issue of material fact whether Kadouh incorrectly interpreted or construed the question or answers on the application.[3] First, because Kadouh

2. This imputation will not occur, however, when the insurer can prove fraud or collusion between the agent and the insured or fraud against the insurer by its agent. *Pitcher v. World Ins. Co. of Omaha*, 327 Mich. 520, 42 N.W.2d 735, 736 (Mich.1950). As there is no allegation of fraud or collusion in this case, we have no cause to consider this issue.

3. For purposes of this appeal, Makki has assumed that Kadouh asked Baghdadi the questions in English rather than his native Arabic,

asked for an "alien registration number" rather than a *"permanent* alien registration number;" and second, because she claimed to have understood no difference between the two. Pl. Br. at 16.

We disagree. As an initial matter, we are to presume that Baghdadi's signature indicates that he read, understood, and attested to the truth of every question on the application form, and that he is strictly liable for any errors therein. *See Asposito,* 243 N.W. at 38–39; *Clark,* 447 N.W.2d at 784. To save her case from this presumption of strict liability, Makki seeks to interpose Kadouh's affidavit. However, Kadouh's affidavit is not free from ambiguity. She specifically states that "[a]s is my general practice, based upon the instructions from Farmers New World Insurance Company, I read the questions contained within the life insurance application form to Mr. Baghdadi." J.A. at 168. Farmers' policy is that questions are to be read as they are written on the application form. J.A. at 182, 206. Although Farmers concedes that local practices may vary, Kadouh's affidavit states that she read the questions based on the instructions from Farmers. Only later in the affidavit does she state that she asked Baghdadi for an "alien registration number" as opposed to a "permanent alien registration number," and that she was not aware of any difference between the two. We cannot conclude that ambiguity or internal inconsistency in this one affidavit, without additional evidence, raises a genuine issue of material fact as to whether Farmers' agent erroneously "interpreted" the question or answers for Baghdadi. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (finding that ambiguous and conclusory affidavit did not raise genuine issue of material fact for trial).

Even were we to accept this affidavit as probative evidence of a material fact, Makki still cannot prevail. Cases in which the "interpretation" exception has been applied have generally been cases in which the agent has taken some affirmative step to disparage or minimize the importance of an application question or an applicant's response. *See Bleam v. Sterling Ins. Co.,* 360 Mich. 208, 103 N.W.2d 466, 467–68 (Mich.1960) (finding that where an agent flatly contradicted the terms of the insurance application, despite having the contradiction raised by the insured, the insurance company was bound by the agent's misunderstanding of the terms); *Pitcher v. World Ins. Co. of Omaha,* 327 Mich. 520, 42 N.W.2d 735, 735–36 (Mich.1950) (finding that where an agent had disparaged applicant's disclosure of various medical conditions as inconsequential for purposes of the application, and there was no evidence of fraud, the insurer was bound by the representations of its agent). The Michigan Court of Appeals case of *Lipsky v. Wash. Nat'l Ins. Co.,* is particularly instructive in the present case. In *Lipsky,* the agent recorded a "no" answer to a question asking whether the applicant's wife had consulted with a medical professional in the past. 152 N.W.2d at 704. The agent wrote "no" despite the fact that the applicant had told the agent that his wife had seen a doctor for what he considered minor and inconsequential ailments. *Id.* at 705. In that case, the agent's interpretation of the disclosure as a "no" was imputed to the principal, and the insurer was bound by its agent's actions. The court reasoned that the agent was in a better position to evaluate the importance of the question and answer and the applicant "should not be judged on a standard be-

which Kadouh speaks as well. Pl. Br. at 4 n. 1.

yond which the [applicant] was capable of answering." *Id.* (citing *Franklin Life Ins. Co. v. William J. Champion & Co.,* 350 F.2d 115 (1965)).

In this case we have absolutely no evidence of disparagement or minimization. The only evidence we have of any interpretation at all is that Farmers' agent, Kadouh, may or may not have asked for an "alien registration number." Although applicants can be liable for even innocent misrepresentations, we find it strains credulity that Baghdadi, who had already gone through several levels of INS review, and was under an order of deportation, could have mistaken his INS case file number for an "alien registration number" much less a "permanent alien registration card number." In fact, nowhere in the official correspondence from the INS is the number "A73488257" ever referred to as an "alien registration number." We do not find on this record that to hold Baghdadi liable for making a false representation would be to judge him "on a standard beyond which [he] was capable of answering." *Lipsky,* 152 N.W.2d at 638. This is especially so where there is no evidence that the agent affirmatively communicated to Baghdadi that the INS case number was acceptable, the application question was unambiguous, and where Baghdadi read and confirmed the accuracy of an answer to a request for a "permanent alien registration card number." *See Jones,* 1994 WL 28575, at *4 (finding insureds liable for misrepresentations on an insurance application they signed, even if the agent had written down the erroneous information on her own initiative). For these reasons, we affirm the district court judgment.[4]

---

4. Because we find Baghdadi's material misrepresentation as to his the alien status dispositive, we do not consider Farmers' other defense, that Baghdadi materially misrepre-

## 2. *Unfair Trade Practices*

The district court granted summary judgment on Makki's unfair trade practices claim under Michigan law. Makki relies on Mich. Comp. Laws Ann. § 500.2019, which defines as an unfair trade practice the "[m]aking or permitting any unfair discrimination between individuals of the same class and equal expectation of life in the rates charged for any contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract." *Id.* Putting aside the fact that Makki submitted no evidence as to any rate discrimination, under Michigan law, it is clear that "the UTPA does not create a private right of action." *Burnett v. Nationwide Mut. Ins. Co.,* No. 212413, 2000 WL 33417376, at *6 (Mich. Ct.App. Jul 07, 2000) (citing *Isagholian v. Transamerica Ins. Corp.,* 208 Mich. App. 9, 527 N.W.2d 13 (Mich.Ct.App.1994) and *Young v. Mich. Mut. Ins. Co.,* 139 Mich.App. 600, 362 N.W.2d 844 (Mich.Ct. App.1984)). The district court did not err.

## 3. *Bad Faith Denial of a Claim; Intentional Infliction of Emotional Distress and Exemplary or Emotional Distress Damages*

Each of these claims requires, *inter alia,* that the plaintiff establish that the defendant breached the insurance contract. *See Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 355 (E.D.Mich.1983); *Stewart v. Rudner,* 349 Mich. 459, 84 N.W.2d 816, 824 (Mich.1957). Because we have already concluded that Farmers was legally entitled to recission due to Baghda-

---

sented whether he "intend[ed] to work or travel outside of the United States for more than 30 days, within the next two years."

di's material misrepresentation, consideration of these claims is unwarranted.

## III. CONCLUSION

For the foregoing reasons we **AFFIRM** the judgment of the district court.