16 F.3d 1219
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Theresa M. JONES, Plaintiff-Appellant,
v.
ALLSTATE LIFE INSURANCE COMPANY and Allstate Insurance
Company, Defendants-Appellees.
 No. 93-1102.
 United States Court of Appeals, Sixth Circuit.
 Jan. 31, 1994.
 
 Before: MERRITT, Chief Judge, and NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a life insurance case where the application for the policy contained material misstatements as to the physical condition and medical history of one of the insured parties. The insurance company refused to honor the policy when that party died, despite a claim by the beneficiary that the inaccuracies in the application were the fault of the insurance company's own agent. On a motion for summary judgment by the insurance company, the district court held that the misstatements relieved the company of the obligation to pay the face amount of the policy. Having concluded, upon de novo review, that the district court reached the correct result, we shall affirm the judgment.
 
 
 2
 * On August 14, 1990, the plaintiff, Theresa Jones, and her husband, Robert E. Jones, applied for a life insurance policy to be issued by defendant Allstate Life Insurance Company. The policy, which was issued in due course, provided for a death benefit to the surviving spouse upon the death of the other spouse. The amount of the benefit was tied to the outstanding balance of the mortgage on the couple's home.
 
 
 3
 Robert Jones died of coronary heart disease on March 5, 1991, when he was 43 years old. The death certificate listed hypertension, obesity and history of smoking as "other significant conditions contributing to death." Pursuant to a clause in the policy that permitted Allstate to contest coverage if an insured died within two years of applying for the policy, Allstate refused to pay the death benefit on the ground that the application for insurance contained material misrepresentations regarding Mr. Jones' medical condition.
 
 
 4
 The application for the policy had been taken by an Allstate agent named Connie Altenbernt. When she met with Mr. and Mrs. Jones on August 14, 1990, Ms. Altenbernt read questions from the insurance application out loud and filled in the answers herself. Mrs. Jones says that she and her husband were not provided with a blank copy of the application to follow as Ms. Altenbernt read the questions.
 
 
 5
 The application asked whether either of the Joneses had smoked within the last twelve months. According to Mrs. Jones, her husband truthfully told Ms. Altenbernt that he had smoked in the past twelve months, but had not smoked since July. Ms. Altenbernt was said to have replied that she would write "no" in response to this question--thereby indicating on the application that Mr. Jones had not smoked in the last twelve months.
 
 
 6
 The application also asked whether either applicant had been treated for or experienced chest pain. Mr. Jones replied in the affirmative but explained that the pain had been diagnosed as resulting from a hiatal hernia. Stating that this was not the sort of chest pain being asked about, Ms. Altenbernt again said that she would check the "no" box.
 
 
 7
 The application asked if either applicant had been treated for or had any symptoms of a "lung disorder"; Ms. Altenbernt allegedly asked the applicants whether either of them had "lung disease." Although Mr. Jones had been treated occasionally for bronchitis and pleurisy, and on one occasion for pneumonia, Mrs. Jones admits that her husband responded "no" to the question. She says that they considered his ailments to be minor, isolated respiratory ailments not rising to the level of a lung disorder or lung disease.
 
 
 8
 Finally, the application requested the height and weight of each applicant. Mrs. Jones testified that Ms. Altenbernt did not ask for this information at all. The completed application, however, gives Mr. Jones' height as 5'10" and his weight as 203 pounds. It is undisputed that Mr. Jones was actually 5'9" tall and weighed approximately 240 pounds. Mrs. Jones says that she never would have acknowledged that her husband weighed only 203 pounds; she suggests that Ms. Altenbernt must have made the data up in order to bring Mr. Jones within Allstate's risk limits.
 
 
 9
 Mrs. Jones asserts that Allstate's insurance agents, who worked on commission, were under extreme pressure to sell policies. She suggests that this pressure, coupled with the prospect of a commission, gave Ms. Altenbernt an incentive to falsify the application and to mask the conditions about which Mr. Jones had been truthful. The record shows that Ms. Altenbernt had received an "advance notice of termination" as a result of insufficient sales less than six months before she sold the policy to the Joneses. Ms. Altenbernt herself said that she felt pressured to increase her sales and that she ultimately quit her job with Allstate due, in part, to this pressure.
 
 
 10
 After filling in the answers on the application, Ms. Altenbernt handed the completed form to Mr. and Mrs. Jones and asked them to sign it. Mrs. Jones says that they did so without reading it and that they were not given a copy when they left the office. It is undisputed, however, that a copy of the completed application was physically incorporated in the copy of the policy received by the Joneses well before the death of Mr. Jones.
 
 
 11
 After Allstate denied coverage, Mrs. Jones filed suit in state court to recover the death benefit. The case was removed to the district court on the basis of diversity of citizenship and the amount in controversy. Allstate counterclaimed for rescission of the policy and moved for summary judgment in its favor. The district court granted the motion, and Mrs. Jones filed a timely notice of appeal.
 
 II
 
 12
 Under Michigan law, a material false statement contained in an application for insurance is grounds for rescission by the insurer. M.C.L. Sec. 500.2218; Weidmayer v. Midland Mutual Life Ins. Co., 414 Mich. 369, 374, 324 N.W.2d 752, 754 (1982). The requirement of materiality is satisfied when the statement was an "inducement" for the issuance of the policy; that is, the statement is material if the insurer would have denied the application if there had been a truthful disclosure. See Wickersham v. John Hancock Mutual Life Ins. Co., 413 Mich. 57, 318 N.W.2d 456, 458-59 (1982). Ordinarily, at least, the insurer does not have to show that the misrepresentation was made fraudulently or in bad faith. See National Life and Accident Ins. Co. v. Nagel, 260 Mich. 635, 638, 245 N.W. 540, 541 (1932); Legel v. American Community Mutual Ins. Co., 201 Mich.App. 617, 506 N.W.2d 530 (1993).
 
 
 13
 If Mr. and Mrs. Jones had filled out the Allstate application without assistance from the Allstate agent, there can be no room for doubt that their misrepresentations would have constituted grounds for rescission regardless of whether they acted in bad faith. The question is more complicated, however, because of the intervention of Allstate's agent, Ms. Altenbernt. Mrs. Jones relies on the proposition that the knowledge possessed by the agent must be imputed to the principal. See, in this connection, Turner v. Mutual Benefit Health and Accident Assoc., 316 Mich. 6, 21, 24 N.W.2d 534, 540 (1946): "The general rule is that knowledge of an agent on a material matter, acquired within the scope of the agency, is imputed to the principal. The rule is applicable to a soliciting agent who is authorized to obtain [insurance] applications." (Citations omitted.) And in Hughes v. John Hancock Mutual Life Ins. Co., 351 Mich. 302, 88 N.W.2d 557 (1958), the Michigan Supreme Court held that
 
 
 14
 "[w]here essential medical facts are fairly disclosed by the applicant to the insurer's agent, and the latter by unilateral mistake or design inserts erroneous or misleading answers in the application, the insurer will be taken as having received such disclosed information and will stand, fully estopped at our bar, from asserting that the erroneous or misleading answer or answers constitute fraud." Id. 351 Mich. at 311; 88 N.W.2d at 562.
 
 
 15
 See also Howard v. Golden State Mutual Life Ins. Co., 60 Mich.App. 469, 482, 231 N.W.2d 655, 662 (1975).
 
 
 16
 Allstate relies on Henson v. John Hancock Mutual Life Ins. Co., 261 Mich. 693, 247 N.W. 102 (1933), where the Michigan Supreme Court held that a false statement placed on an application by an insurer's agent was grounds for rescission notwithstanding that the applicant told the agent the truth. It was sufficient, according to Henson, that the insurer show that the application contained a false statement and that knowledge of the true facts would have led it to deny coverage.
 
 
 17
 Henson was qualified, however, by Pitcher v. World Insurance Company of Omaha, 327 Mich. 520, 42 N.W.2d 735 (1950), where the court made it clear that its holding in Henson had been dependent upon the conclusion that the agent had defrauded the insurance company. 327 Mich. at 523-24; 42 N.W.2d at 736. Thus the Pitcher court reaffirmed the principle that statements made to an insurer's agent are imputed to the insurer. The only instance in which this will not be so, said the court, is when the insurer can prove fraud or collusion between the agent and the insured or fraud against it by its agent. 327 Mich. at 524; 42 N.W.2d at 736.
 
 
 18
 We need not reach the question of fraud or collusion here. Allstate argues that even if truthful statements to Ms. Altenbernt would prevent it from claiming misrepresentation, Mr. Jones made no truthful statements regarding his "lung disorder" or his weight. Consequently, Allstate says, it is not estopped from claiming that these conditions were misrepresented in the application. We agree. The weight issue is the clearer one, and because it is dispositive, standing alone, we shall confine our discussion to it.
 
 
 19
 Taking Mrs. Jones' allegations as true, there was only one representation to Allstate regarding Mr. Jones' weight--the statement in the application that he weighed 203 pounds. Mrs. Jones has not alleged that her husband made any truthful disclosure about his weight to Ms. Altenbernt. Therefore, the cases requiring that Allstate make a showing of collusion or fraud against it by its agent are inapposite; Allstate only has to show a material misrepresentation on the application. This it has done.[1]
 
 
 20
 Mrs. Jones argues that this misrepresentation cannot form grounds for rescission because neither she nor her husband made any oral misstatement to agent Altenbernt. But whether Ms. Altenbernt wrote down the false data on her own initiative is immaterial; both Mr. and Mrs. Jones signed the application and declared, in doing so, that the representations contained in the application were truthful to the best of their knowledge.
 
 
 21
 In Asposito v. Security Benefit Assn., 258 Mich. 507, 243 N.W. 37 (1932), the Michigan Supreme Court addressed just such a situation and held that an applicant for insurance has a duty to read what he submits to the insurance company. If the applicant signs the application, said the court, knowledge of the contents is imputed to him. 258 Mich. at 513-14; 243 N.W. at 38-39. In Clark v. John Hancock Mutual Life Ins. Co., 180 Mich.App. 695, 698, 447 N.W.2d 783, 784 (Mich.App.1989), similarly, the Court of Appeals of Michigan held that where a false representation had been unilaterally placed in an insurance application by the insurer's agent, the insured could not disclaim the representation on ground that he had not read the application before signing it.
 
 
 22
 However inadvertent the misrepresentation as to Mr. Jones' weight may have been, it was a misrepresentation and it was material. Under the rule of Asposito and Clark, the Joneses must be held to their signed statement. The rule applies with particular force here, the Joneses having received a copy of the application when they received their policy from Allstate. See Metropolitan Life Ins. Co. v. Freedman, 159 Mich. 114, 116, 123 N.W. 547, 548 (1909), where the Michigan Supreme Court declared that when a complete copy of the policy containing the application is provided to an insured, it is the insured's "duty to know that the representations therein contained ... [are] true...." Id. See also Ruggirello v. Detroit Automobile Inter-Insurance Exchange, 272 Mich. 44, 260 N.W. 787 (1935), where the court stated:
 
 
 23
 "even though the assured may claim that he did not read his application, and was unaware of the false statement appearing therein, if the application was attached to the policy and thus in the possession of the assured, the [assured], unless misled by the insurer or its agent, will as a general rule be charged with knowledge of the contents; it being his duty to know that the contents of the application set out in the policy are true." 272 Mich. at 48, 260 N.W. at 788.
 
 
 24
 The judgment in favor of the defendants is AFFIRMED.
 
 
 
 [1]
 Mrs. Jones cites Turner, 24 N.W.2d at 539, for the proposition that when an agent unilaterally makes a false statement on the insured's application, the insurer must show an intent to deceive. Although the Turner court did require such a showing, the Turner decision was governed by a statute (3 Comp. Laws Sec. 12444 (1929)) that specifically required the insurer to show actual intent to deceive in order to disclaim coverage. The statute governing this dispute, M.C.L. Sec. 500.2218, does not require such a showing for rescission of a policy