*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0237p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

OLD LINE LIFE INSURANCE COMPANY OF AMERICA,
　　　　　　　　　　　　　*Plaintiff-Appellee,*

　　　　　*v.*

DAVID K. GARCIA,

　　　　　　　　　　　　*Defendant-Appellant.*

No. 04-1481

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 02-40239—Paul V. Gadola, District Judge.

Argued: March 9, 2005

Decided and Filed: June 2, 2005

Before: MOORE and SUTTON, Circuit Judges, CARMAN, Judge.[*]

---

## COUNSEL

**ARGUED:** John P. Nicolucci, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for Appellant. K. Scott Hamilton, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellee. **ON BRIEF:** John P. Nicolucci, Stephen O. Schultz, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for Appellant. K. Scott Hamilton, DICKINSON, WRIGHT, PLLC, Detroit, Michigan, for Appellee.

---

## OPINION

---

CARMAN, Judge. Defendant/Appellant, David Garcia ("Garcia"), appeals from the Opinion and Order Granting Summary Judgment for Plaintiff entered by the United States District Court for the Eastern District of Michigan, Southern Division. The District Court voided and rescinded a life insurance policy between Garcia's mother ("the insured") and Plaintiff/Appellee Old Line Life Insurance Company of America ("Old Line"). In addition, the judgment ordered that Garcia's counterclaim for coverage under the policy be dismissed with prejudice. Garcia filed a timely appeal. For the reasons set forth herein, Garcia's appeal is granted and the case remanded to the District Court for entry of judgment in Garcia's favor.

---

[*]The Honorable Gregory W. Carman, United States Court of International Trade, sitting by designation.

1

## BACKGROUND

On January 12, 2001, Patricia Garcia, Garcia's mother and the insured, applied for a $2 million life insurance policy from Old Line. (J.A. at 198.) The insured filed the application for insurance four days before her sixty-ninth birthday. (J.A. at 198-202.) The insured named Garcia as the sole beneficiary of the policy. (J.A. at 200.)

At the time of the application, the insured had three existing life insurance policies that totaled $2 million. (J.A. at 200.) The existing policies were term policies with end dates between 2003 and 2009. (J.A. at 93-94.) The Old Line application for insurance requested a "yes" or "no" as to whether the policy applied for was "replacement." (J.A. at 200.) The application defined "replacement" as "that the insurance being applied for *may* replace, change, or use any monetary value of any existing or pending life insurance policy or annuity. If replacement *may* be involved, complete and submit replacement-related forms." (J.A. at 200 (emphasis added).) The application does not state that existing coverage must be replaced in order to acquire a policy from Old Line.

The insured also completed and submitted Old Line's Notice Regarding Replacement ("Replacement Notice"). (J.A. at 305.) The Replacement Notice is required "in all cases where a replacement is involved or *suspected* by the distributor." (J.A. at 309 (emphasis added).) The Replacement Notice states, "[t]he life insurance I intend to purchase from the insurer named above *may replace* or alter existing life insurance." (J.A. at 305 (emphasis added).) The form provides lines for the applicant to list the policies that "*may* be replaced." (J.A. at 305 (emphasis added).) The Replacement Notice neither requires the applicant to replace existing policies nor makes securing a policy from Old Line contingent upon cancellation of existing insurance.

Old Line reviewed the application (J.A. at 229), had the insured undergo a medical examination (J.A. at 223-27, 229), and had an independent, third party company ("SBSI") interview her (J.A. at 229). During the interview, SBSI apparently asked the insured whether the Old Line policy would replace existing insurance; to which, the insured apparently responded, "yes." (J.A. at 108.)

The insured's agent, John Dobben ("Dobben"), who was also an authorized agent of Old Line, had his wife, Joan, complete the application on the insured's behalf. (J.A. at 204.) Dobben acknowledged that the three existing policies had been identified as "replacement" on the application because they "would have been replaced at the end – when they reached the end of the ten year period of time." (J.A. at 94.) The plan with regard to the existing policies was also consistent with Old Line's guidelines on replacement, which contemplated the lapse[1] of an existing policy as an acceptable means of replacement. (J.A. at 210, 308.) The Garcias also were aware of Dobben's plan to allow the existing policies to lapse. (J.A. at 95.) According to Dobben, Old Line never indicated to the Garcias that the existing policies had to be canceled before Old Line would issue or upon issuance of the Old Line policy. (J.A. at 207.)

Dobben also indicated that a number of other factors might impact whether existing policies were replaced:

> There are possibilities that those things were going to be replaced and that's why we fill out the replacement forms, but that would apply to whether you were going to borrow money out of an existing cash value or change dividends or reduce coverage or do any number of things you're going to fill in that replacement part of the policies.

---

[1]An insurance policy lapses when the policy holder fails to pay a premium and the coverage is canceled or terminated. (J.A. at 210.)

(J.A. at 205.)  To Dobben, whether an existing policy is replaced would depend on the "product" that the insurance company issues.  (J.A. at 441.)

On April 5, 2001, Old Line approved the insured's application.  (J.A. at 230.)  On the same day, Old Line sent the insured a letter ("notification letter") notifying her that the application had been approved and that a policy was forthcoming.  (J.A. at 236.)  The letter did not specify that the Old Line policy was contingent upon the insured replacing her existing coverage.  The notification letter also did not state that Old Line was issuing the policy in reliance upon the insured's representation that she may replace the existing policies.

Old Line issued the insured a $2 million ten-year term life policy with an effective date of April 10, 2001.  (J.A. at 234, 239.)  The policy does not contain a requirement that the insured replace her existing life insurance for the Old Line coverage to be effective.  Coverage went into force upon the insured's payment of the first premium, which was approximately May 16, 2001.  (J.A. at 151.)

In May 2001, the insured was diagnosed with lung cancer.  (J.A. at 216.)  The insured died from lung cancer on January 24, 2002.  (J.A. at 154.)

On February 5, 2002, Garcia filed a claim for benefits with Old Line.  (J.A. at 259.)  Old Line conducted an extensive investigation because the insured's death occurred within the two-year contestability period contained in the policy.  (J.A. at 265-66.)  In May 2003, Old Line still had not made a determination as to whether the claim was payable (J.A. at 266) and has never denied the claim for life insurance benefits.

John Rugel ("Rugel"), Director of Underwriting for Old Line, reviewed the insured's file after the investigation concerning coverage began.  Rugel stated during his deposition in preparation for this case that nothing on the insured's application appeared to have been answered incorrectly or incompletely.  (J.A. at 271.)  Further, Rugel admitted that the Old Line application does not require replacement but states that existing policies "may" be replaced.  (J.A. at 277.)  Rugel stated that the "box marked on the application under replacement had been marked yes for each policy *since at the end of the initial term each of the policies would have been replaced.*"  (J.A. at 272 (emphasis added).)  In Rugel's review of Garcia's claim, he found no indication that Old Line informed the insured or her insurance agent that the existing policies must be cancelled or replaced within a certain period to preserve coverage under the Old Line Policy.  (J.A. at 277.)  Rugel also stated that he was not aware of any Old Line requirement that an existing policy that is being replaced by an Old Line policy must be "cancelled as opposed to lapsing or coming to the end" of its term.  (J.A. at 278.)[2]

Old Line's own Customer Service and Compliance Manual for Producers and Employees ("Old Line Manual") has a section entitled "Replacement Guidelines."  (J.A. at 307.)  The Old Line Manual defines "replacement" as follows:

> Subject to any more restrictive state law requirements, the Company defines a replacement to be any transaction in which new life insurance or a new annuity is to be purchased, and it is known or should be known to the proposing distributor that by reason of such transaction, an existing life insurance policy or annuity contract has been or is to be:
>
> 1.      Lapsed, forfeited, surrendered, or otherwise terminated. . . .

---

[2]After a short break and consultation with Old Line's attorney, Rugel stated that replacement "normally" occurs within thirty to sixty days from the date the new policy is issued.  (J.A. at 278.)

(J.A. at 307-08.) Old Line's Manual states that "as a general rule replacement is not in a client's best interest." (J.A. at 308.) Additionally, Old Line's Manual is silent with regard to a period within which replacement must or should occur.

### PROCEDURAL HISTORY

On June 27, 2002, Old Line filed a complaint in the U.S. District Court for the Eastern District of Michigan seeking declaratory judgment and rescission of the insured's policy. In response, Garcia filed a cross-claim for breach of contract seeking to force Old Line to honor the insurance policy it issued to the insured and pay Garcia's claim. (J.A. at 52.) Old Line and Garcia then filed cross-motions for summary judgment. (J.A. at 60, 168.)

In its motion, Old Line claimed that the insured misrepresented that the Old Line policy would replace her existing policies. (J.A. at 61-62.) Further, the misrepresentation – as viewed by Old Line – was material to Old Line's decision to issue the insured policy. (*Id.*) Old Line also argued that the insured's failure to cancel the existing policies constituted a failure of a condition of the insurance contract and was grounds for rescinding the policy. (J.A. at 62.)

In his motion for summary judgment, Garcia submitted that Old Line's allegations were without merit as there was no misrepresentation concerning replacing the existing policies. (J.A. at 169.) In his supporting brief, Garcia noted that the application and Replacement Notice use the permissive term "may" – rather than an obligatory term such as "must" or "shall" – when referring to replacement. (J.A. at 187.) In addition, Garcia moved for summary judgment on his counter-claim for breach of contract for Old Line's failure to honor the terms of its insurance policy. (J.A. at 170.)

The District Court granted Old Line's motion and declared the insured's policy void and rescinded. (J.A. at 509-10.) The District Court ruled that the insured materially misrepresented that she would replace her existing policies with the Old Line policy and stated that Old Line would not have issued its policy had it known that the insured would not terminate the existing policies. (J.A. at 506-07.)[3]

On appeal, Garcia argues that the District Court erred in failing to grant his motion for summary judgment. (Final Br. of Appellant at 16.) Garcia asserts that there are no genuine issues of material fact concerning the issue of replacement or satisfaction of a condition subsequent. (*Id.* at 16, 20.) Garcia claims that because there was no misrepresentation of any material fact, Old Line's motion for summary judgment was wrongly decided by the District Court. (*Id.* at 20.) Further, Garcia believes that the District Court erred in not granting summary judgment to Garcia on his breach of contract claim. (*Id.*) In the alternative, Garcia argues that if the court finds there are genuine issues of material fact, they must be heard by a trier of fact. (*Id.* at 22.)

### STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision to grant or deny a motion for summary judgment. *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). In so doing, the appellate court uses the same legal standard as the district court. *Id.* Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The trial court should

---

[3]Old Line claimed that the insured would have been considered over-insured at $4 million (the existing $2 million from three term policies plus Old Line's $2 million policy) in life insurance coverage. Old Line argued that it, therefore, would not have issued its policy for additional, rather than replacement coverage. (J.A. at 158-60.)

consider a "material fact" in dispute "genuine" if a reasonable jury could return a verdict in favor of the nonmoving party. *Tech Dry*, 336 F.3d at 506. We consider all factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 433 (6th Cir. 2005). When reviewing cross-motions for summary judgment, this Court must assess each motion on its own merits. *Tech Dry*, 336 F.3d at 506.

## DISCUSSION

On review, the parties presented the following questions to this Court: 1) Did the insured misrepresent that she would replace her existing policies; and 2) Was the Old Line policy clear and unambiguous? We answer the first question in the negative and the second in the affirmative. Michigan law controls our decision in this case.[4]

For the reasons that follow, this Court holds that the District Court erred in granting summary judgment to Old Line. In applying Michigan law with regard to the definition of "misrepresentation," this Court holds that, to be the basis for rescission, the representation – alleged to be a misrepresentation – must relate to a past or present fact but not to a future promise. *See* Mich. Comp. Laws § 500.2218(2). The insured's possible replacement of the existing policies was prospective, and the language discussing replacement was wholly permissive. Therefore, the insured's representations could not have been the basis of a misrepresentation claim. In addition, it is clear that the insured's representations concerning replacement were accurate and did not misrepresent her intentions. Further, Old Line's documents were clear and unambiguous. Old Line neither required replacement of the existing policies with the Old Line Policy nor was the Old Line policy conditioned upon replacement. Based on this holding, replacement was discretionary and failure to do so, even after acknowledging the possibility that it might occur, was not a misrepresentation. Because there are no genuine issues of material fact in dispute and contrary to the District Court ruling, Garcia is entitled to judgment on his cross-claim for breach of contract.

I.      *There Was No Misrepresentation as to Replacement.*

Michigan law permits rescission of an insurance policy when the insured makes a material misrepresentation in the application for insurance. *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 331 (1998), *appeal denied*, 460 Mich. 871 (1999). A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts. *See Oade v. Jackson Nat'l Life Ins. Co. of Mich.*, 465 Mich. 244, 254 (2001).

A.      The insured's statements concerning replacement were not misrepresentations because they related to a future promise rather than a past or present fact.

On the application for insurance, the insured checked the "replacement" box "yes" and submitted the Replacement Notification. She also indicated during a telephone interview that the existing policies would be replaced.[5] On the application, Old Line defined "replacement" as "that

---

[4] The District Court applied Michigan law in this diversity case. On appeal, neither party has disputed the District Court's choice of law.

[5] A summary report of the SBSI interview indicates that the insured was asked, "Will this insurance replace any insurance in force?" The insured apparently answered, "Yes." (J.A. at 108.) This summary does not indicate that the insured stated or implied that the existing policies had already been replaced or were in the process of being terminated. Further, this Court is reluctant to rely upon a summary of an out-of-court statement by a deceased person taken by a third party in finding that a misrepresentation occurred.

the insurance being applied for *may* replace, change, or use any monetary value of any existing or pending life insurance policy or annuity." (J.A. at 200 (emphasis added).) The Replacement Notification similarly identifies the policies that "*may* be replaced as a result of the transaction." (J.A. at 305 (emphasis added).) Old Line did not define "replacement" as an event that had already occurred or would occur concurrent with the application or some other defined event. The documents both refer to a possible future replacement event.[6]

Under Michigan law, the insured's representations concerning a future promise of a possible replacement cannot be considered misrepresentations. Michigan statute defines a "representation" in an insurance context as "a statement as to *past or present* fact . . . ." Mich. Comp. Laws § 500.2218(2) (emphasis added); *see also Forge & NMF, Inc. v. Smith*, 458 Mich. 198, 212 (1998) (citations omitted) ("A promise regarding the future cannot form the basis of a misrepresentation claim."); *cf. Oade*, 465 Mich. at 246 (holding that where the applicant had "an explicit, contractual continuing duty to ensure that the answers in his insurance application remained true until the effective date of the policy" the applicant's "failure to supplement his medical history rendered his original answers false, making them 'misrepresentations' within the meaning of MCL 500.2218(2)"). Any representation the insured made concerning the replacement of her existing policies was related to a future act: possibly replacing the existing policies at some (unspecified) future date. Consequently, those representations cannot be the basis of a misrepresentation claim or rescission of the Old Line policy. It was reversible error for the District Court to so find.

B.      The insured's representations concerning replacing the existing policies were accurate, not misstatements of her intentions.

Old Line argues that because the insured indicated in the application, Replacement Notification, and telephone interview that the Old Line policy was a replacement, her later failure to replace the existing policies was a misrepresentation sufficient to rescind the policy. The District Court accepted Old Line's position. However, both Old Line and the District Court failed to recognize that no document provided to the insured required replacement and she was never put on notice that replacement was a condition for the policy to be effective.

Nonetheless, had the insured not passed away a few months after the Old Line policy went into effect, the record indicates that the existing policies eventually would have been replaced in a manner consistent with Old Line's definition if the term. The Old Line Manual defines "replacement" as follows:

Subject to any more restrictive state law requirements, the Company defines a replacement to be any transaction in which new life insurance or a new annuity is to be purchased, and it is known or should be known to the proposing distributor that by reason of such transaction, an existing life insurance policy or annuity contract has been or *is to be*:

1.      *Lapsed*, forfeited, surrendered, or otherwise terminated. . . .

(J.A. at 307-08 (emphasis added).) The Old Line Manual does not place a time restriction on the period in which the lapse must occur. The agent Dobben testified that the existing policies would have been allowed to lapse at the end of their terms, which is wholly consistent with the Old Line Manual definition of replacement.

Old Line's own Director of Underwriting (Rugel) stated that the insured's application had been answered correctly and completely. He also conceded that the insured marked the replacement

---

[6]*See*, *infra*, Section IIB, for further discussion of the interpretation of "may" in this context.

box on the application because the existing policies would be replaced at the ends of their terms. Further, Rugel admitted that Old Line did not require replacement. Although Old Line did not require replacement or specify when such should occur, Rugel offered that replacement "normally" occurs within thirty to sixty days from the date the new policy is issued. Nevertheless, normal practice is not tantamount to a requirement or a contractual or contingent obligation.

That Old Line did not limit the time within which the replacement by lapsing must occur – or for that matter specify that it must occur at all – is the result of its own choices in drafting. To the extent that Old Line relied upon the insured's representations that she "may replace" her existing policies, it did so at its own risk. Any inducement Old Line suffered in issuing the policy to the insured was wholly a result of its chosen language by not explicitly requiring replacement of the existing policies and specifying a date certain for doing so.

This Court finds that the insured's statements concerning replacement were consistent with Old Line's own definitions of the term and were not misrepresentations. It was reversible error for the District Court so to find.

II.        *Old Line's Policy Was Clear and Unambiguous.*

"Policies of insurance are much the same as other contracts; they are matters of agreement by the parties and the job of the courts is to determine what that agreement was and enforce it accordingly." *Murphy v. Seed-Roberts Agency, Inc.*, 79 Mich. App. 1, 7 (1977) (citation omitted). The purpose of insurance is to insure against a loss. Thus, "courts should not construe a policy to defeat coverage unless the language [of the policy] requires it." *W. Cas. & Sur. Group v. Coloma Township*, 140 Mich. App. 516, 522 (1985). If the provisions of a policy are clear and unambiguous, the court applies the terms in their "plain, ordinary, and popular sense." *Clevenger v. Allstate Ins. Co.*, 443 Mich. 646, 654 (1993) (citation omitted). An unambiguous contract is not open to construction and must be enforced as written. *Cochran v. Ernst & Young*, 758 F. Supp. 1548, 1554 (E.D. Mich. 1991).

However, if an insurance policy provision is ambiguous, a reviewing court construes it against the drafting insurer and in favor of the insured. *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994), *appeal denied*, 447 Mich. 971 (1994). Thus, the insurance company has an obligation to *clearly express* any limitations in its policy. *Ford Motor Credit Co. v. Aetna Cas. & Sur. Co.*, 717 F.2d 959, 961 (6th Cir. 1983) (emphasis added). An appellate court will construe any ambiguity "liberally in favor of the insured and *strictly* against the insurer." *Id.* (emphasis in original). In addition, Michigan has a long history of liberally construing questions and answers in an application for insurance in favor of the insured. *Brown v. The Metro. Life Ins. Co.*, 65 Mich. 306, 313 (1887); *see also New York Life Ins. Co. v. Modzelewski*, 267 Mich. 293, 296 (1934); *Northwestern Nat'l Life Ins. Co. v. Nalbant*, 119 F.2d 725, 728 (6th Cir. 1941) (interpreting Michigan law).

Whether ambiguity exists in the terms of a contract is a question of law for the court to decide. *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). "A contract is ambiguous when its terms are reasonably and fairly susceptible to multiple understandings and meanings." *Id.* (citing *Parameter Driven Software, Inc. v. Mass. Bay Ins. Co.*, 25 F.3d 332, 336 (6th Cir. 1994)). Disagreement amongst the parties as to the meaning of a contract term does not necessarily create ambiguity as a matter of law. *Steinmetz Elec. Contractors Ass'n v. Local Union No. 58 Int'l Bhd. of Elec. Workers, AFL-CIO*, 517 F. Supp. 428, 432 (E.D. Mich. 1981). To determine whether an ambiguity exists, the court must read the insurance policy as a whole. *See Murphy*, 79 Mich. App. at 8.

A.        Old Line's policy was clear and unambiguous.

The policy for insurance – the contract in dispute – is silent with regard to replacement. It is not ambiguous; it simply does not address replacement at all. Because the policy is unambiguous, it is not necessary to supplement it or review extraneous sources. *Cochran*, 758 F. Supp. at 1554. Similarly, the subjective understandings of the parties are irrelevant when reviewing unambiguous contracts. *Steinmetz*, 517 F. Supp. at 432. Because this Court finds that the policy is plain and unambiguous, it is subject to review based on its terms' common, ordinary, and popular meanings. As we have already determined that the insured did not misrepresent that she would replace her existing policies, the fundamental issue is whether – as Old Line asserts – the policy was contingent upon the insured replacing her existing policies. We find that it was not. This Court cannot read into the policy an obligation that does not exist. The District Court should not have done so either.

B.        Even if the policy were ambiguous, replacement was not required.

Were this Court to find the policy ambiguous and consider extraneous evidence (*i.e.*, the application, Replacement Notification, and notification letter), we would reach the same result: replacement was not required. The notification letter, like the policy, is silent with regard to replacement. Replacement is mentioned only in the application and Replacement Notification. In both documents the term "replacement" is defined by Old Line and includes the permissive word "may." (J.A. at 200, 305.) The application defined "replacement" as "that the insurance being applied for *may* replace, change, or use any monetary value of any existing or pending life insurance policy or annuity. If replacement *may* be involved, complete and submit replacement-related forms." (J.A. at 200 (emphasis added).) The Replacement Notice states "the life insurance I intend to purchase from the insurer named above *may replace* or alter existing life insurance." (J.A. at 305 (emphasis added).)

"May" is defined as "hav[ing] permission to" or "hav[ing] the liberty to" do something. *Webster's New Collegiate Dictionary* 704 (G. & C. Merriam Co. 1981). The term "may" also "indicate[s] a certain measure of likelihood or possibility." *The American Heritage Dictionary of the English Language* 1112 (3d ed., Houghton Mifflin Co., 1996). In addition, the Oxford English Dictionary includes among the many definitions of "may" that in relation to the future "may = 'perhaps will.'" *IX The Oxford English Dictionary* 501 (2d ed., J. A. Simpson & E. S. C. Weiner eds., Clarendon Press 1989).

This Court notes that dictionaries also define the term "may" as meaning "must" when used in statutes, deeds, or contracts. *See Webster's New Collegiate Dictionary* 704; *Webster's Third New International Dictionary of the English Language* (Unabridged) 1396 (Merriam-Webster Inc. 1993). Webster's New Collegiate Dictionary qualifies this obligatory definition of "may" to circumstances "where the sense, purpose, or policy requires this interpretation." *Webster's New Collegiate Dictionary* 704. Old Line limited its discussion of replacement to the application and Replacement Notification.[7] We find neither a reason to expand the context in which "may" may mean "must" nor a "sense, purpose, or policy" that require this interpretation under the facts of this case. The language in Old Line's documents is clear and unambiguous: replacement is permitted and perhaps will occur in the future but is not required.

Even if the language in Old Line's documents were ambiguous, the conclusion would be the same. Old Line drafted the application, Replacement Notice, and policy, including the definition of the term "replacement." As such, the terms must be construed strictly against the insurer and in

---

[7]The Court notes that Old Line also defined "replacement" in its Manual. There is no indication that the insured received a copy of the Old Line Manual. Even if she had, as noted previously, her actions were consistent with the definition of "replacement" found in the Manual.

favor of the insured. Any doubt, then, as to the meaning of Old Line's use of "may" and "replacement" in its terms would favor Garcia. As indicated above, this Court finds that "may" is permissive rather than obligatory. This alternative analysis does not change that.

Old Line had an obligation to clearly express any limitations in its policy; it did not do so. Consequently, the insured was not obligated to replace her existing insurance, and her failure to do so neither violated the terms of her agreement with Old Line nor resulted in a misrepresentation. The District Court erred in deciding otherwise. Because the terms of the policy are clear and unambiguous and provide coverage upon the insured's death, Old Line is required to honor the policy. No genuine issues of material fact remain. Accordingly, Garcia's cross-claim for breach of contract is granted.

## CONCLUSION

Because the Old Line documents were clear and unambiguous and did not require replacement of the existing policies and because the failure of the insured to replace was not a misrepresentation, rescission of the Old Line policy by the District Court was reversible error. Because there are no genuine issues of material fact in dispute, judgment should be entered in favor of Garcia on his breach of contract counter-claim. This case is **REVERSED** with direction to the District Court to enter judgment consistent with this opinion.