**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0558n.06

No. 08-2193

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MOHAMMED HUDA, | ) | **FILED** |
|  | ) | **Aug 12, 2009** |
| **Plaintiff - Appellant,** | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| and | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| THE DETROIT MEDICAL | ) | COURT FOR THE EASTERN |
| CENTER, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| **Intervening Plaintiff,** | ) |  |
|  | ) | **O P I N I O N** |
| v. | ) |  |
|  | ) |  |
| INTEGON NATIONAL | ) |  |
| INSURANCE CO., | ) |  |
|  | ) |  |
| **Defendant - Appellee.** | ) |  |
| ———————————————————— | ) |  |

Before: McKEAGUE and WHITE, Circuit Judges; and MARBLEY,[*] District Judge.

**WHITE, Circuit Judge.** In this insurance coverage dispute over which the district court exercised diversity jurisdiction, plaintiff Mohammed Huda, Sr. (Huda) appeals the court's grant of summary judgment to defendant Integon National Insurance Company (Integon). We **AFFIRM**.

**I. BACKGROUND**

On June 22, 2007, Huda, through agent Kaplani Insurance Agency, Inc., signed an application for no-fault automobile insurance with defendant Integon. The first two pages of the application contain general information about the applicant, the underwriter, the vehicle, and the insurance

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

coverage.  Specifically, the second page has a section entitled "Driver and Household Member

Information," which instructs the applicant to "List all persons of eligible driving age or permit age."

(Record on Appeal (ROA) at 338.)  The section contains Huda's name only.

On the third page of the application, a section entitled "Undisclosed Driver and Rejection of

Coverages" (the "Undisclosed Driver" section) states:

### WARNING!  READ THIS ENDORSEMENT CAREFULLY

> The undersigned agrees that ALL persons of eligible driving age or permit age who live with me, as well as reside in my household, are listed in this application.
>
> The undersigned further agrees that this endorsement will serve as a rejection of all Coverages, which are not required by Michigan law, while any vehicle covered under this policy is being driven, operated, maintained, manipulated, serviced, or used in any manner by an unlisted driver who resides in the named insured's household.
>
> I understand that I have a continuing duty to notify the Company in writing of any changes of members of my household of eligible driving age or permit age.
>
> The undersigned agrees that this policy may be rescinded and declared void if this application contains any false information or if any information that would alter the Company's exposure is omitted or misrepresented.
>
> Acknowledged by:
> Named Insured's Signature                                        Date

(ROA at 339.)  Huda never signed or dated the "Undisclosed Driver" section.  He did, however, sign

the "Collision Insurance Authorization" section on the same page.  (*Id.* at 339.)  He also signed the

"Named Driver Exclusion Notice and Authorization" and the "Applicant's Certification" on the

following pages.  (*Id.* at 340-41.)  Notably, the "Applicant's Certification" begins:

> I certify all answers to all questions in this application are true and correct and I understand, recognize and agree said answers are given and made for the purpose of inducing the Company to issue me a policy for which I have applied.  I further certify

2

> that ALL persons of eligible driving age or permit age who live with me, as well as reside in my household, are shown above. I certify my principal residence and place of vehicle garaging is correctly shown above and is in the state for which I am applying for insurance at least ten (10) months each year. I understand the Company may declare this policy null and void if said answers on this application are false, misleading, or materially affect the risk the Company assumes by issuing the policy. In addition, I understand I have a continuing duty to notify the Company of any changes of: address, location of vehicles, members of my household of eligible driving age or permit age, operators of any vehicles listed on the policy, or use of any vehicle listed on the policy. I understand the Company may declare this policy null and void if I do not comply with my continuing duty of advising the Company of any change as noted above.

(*Id.* at 341.)

Huda states in an affidavit: "I was only provided with the signature pages of this Application and specifically, I was never provided with page two of the aforementioned Michigan Personal Auto Insurance Application which asked to list all persons of eligible driving age or permit age." (*Id.* at 348.) He also alleges that he was "never asked if there were other eligible drivers" in his household. He does not, however, claim that he ever informed anyone at Kaplani that he had a son or a wife.

At the same time that he applied for the Integon policy, Huda provided documentation of prior coverage in the form of a Farm Bureau Insurance certificate of no-fault auto insurance and a Farm Bureau homeowners insurance policy. The certificate of no-fault insurance listed only Huda as a named insured. In contrast, the homeowners policy listed Huda and his wife Kishwar Huda as insured persons living at the same mailing address.[1] (ROA at 343.)

---

[1] Integon claims that it only used the homeowners policy to determine whether Huda qualified for a discount on his auto policy. (Appellee's Br. at 20.)

3

Huda's application led Integon to issue a no-fault auto policy that listed Huda as the "Named Insured." (ROA at 181.) The "Misrepresentation and Fraud" section of the policy states,

> A.    The statements made by you in the application are deemed to be representations. If any representation contained in the application is false, misleading or materially affects the acceptance or rating of this risk by us, by: direct misrepresentation; omission; concealment of facts or incorrect statements; the coverage provided under this policy will be null and void.

(*Id.* at 196.)[2]

One month later, on July 22, 2007, an uninsured vehicle hit the vehicle that was the subject of Integon's policy while Huda's seventeen-year-old son, Mohammed Huda, Jr., (Huda, Jr.) was driving and Huda was a passenger. The accident caused Huda to suffer serious injuries, including the loss of his right eye, multiple rib fractures, and injuries to the musculo-skeletal system that required hospitalization, medical care, and treatment.

When Huda made a claim for no-fault personal insurance protection (PIP) benefits under the policy, Integon denied the claim and declared the policy void *ab initio* because Huda had not listed Huda, Jr. as a household resident on the policy application. Huda then filed this action for no-fault PIP benefits under Michigan's No-Fault Act, M.C.L. 500.3101 et seq., in Wayne County Circuit Court. On October 12, 2007, Integon removed the action to federal district court claiming diversity jurisdiction.[3] The district court later permitted the Detroit Medical Center (DMC) to intervene.

---

[2]In the district court, Huda challenged the applicability of the "Misrepresentation and Fraud" section of the policy. (ROA at 488.) Integon, however, does not appear to rely on this section in its arguments on appeal.

[3]Huda is a resident of Michigan. Integon is a North Carolina corporation with its principal place of business in Winston Salem, North Carolina.

On cross-motions for summary judgment, the district court granted Integon summary judgment and dismissed with prejudice Huda's complaint and DMC's intervening complaint based on Integon's arguments.

Huda timely appealed. This court granted DMC's motion to adopt Huda's appellate brief.

## II. ANALYSIS

This court has jurisdiction under 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4(a)(1)(A). A federal court exercising diversity jurisdiction applies the law of the forum state. *Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008). We review the district court's grant of summary judgment de novo. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party must inform the district court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The nonmoving party must then "set forth specific facts showing there is a genuine issue for trial." *United States v. Ninety Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party." *Vill. of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008).

## A.  Material Misrepresentations

On appeal, Huda asserts that he made no material misrepresentations because he did not sign the "Undisclosed Driver" section of the application.  Huda further claims that even if he did make a material misrepresentation, Integon is estopped from rescinding the policy because:  1) Integon made a unilateral mistake by accepting the application for insurance (and the ensuing premiums) without following-up on Huda's failure to sign the "Undisclosed Driver" section, and 2) Integon had knowledge of the misrepresentation due to its possession of Huda's homeowners insurance policy, which indicated that he lived with his wife.

Applying well-settled Michigan law "that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio," Michigan courts have grappled with what constitutes a misrepresentation.  *Lake States Ins. Co. v. Wilson*, 586 N.W. 2d 113, 115 (Mich. Ct. App. 1998); *see also Old Line Ins. Co. of Am. v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005).  For example, in *Lake States Insurance*, 586 N.W. 2d at 114, an insurance representative typed the plaintiff's application and the plaintiff signed the application without reading it.  The Michigan Court of Appeals held that the insured's failure to list each driver residing in her household constituted a misrepresentation.  *Id.* at 115-16.  Similarly, in *Montgomery v. Fidelity & Guaranty Life Insurance Co.*, 713 N.W. 2d 801 (Mich. Ct. App. 2005), the Michigan Court of Appeals allowed the defendant insurance company to void a life insurance policy due to a misrepresentation of the insured decedent's tobacco use.  The wife of the decedent argued that the insurance agent was "the one who

actually completed the application and that neither she nor the decedent read the application before

signing." *Id.* at 804. The court, however, held that

> [w]hether it was plaintiff, the decedent, or the agent who misrepresented the
> decedent's tobacco use on the application is not material because plaintiff and the
> decedent signed the authorization, stating that they had read the questions and
> answers in the application and that the information provided was complete, true, and
> correctly recorded. It is well-established that failure to read an agreement is not a
> valid defense to enforcement of a contract. A contracting party has a duty to examine
> a contract and know what the party has signed, and the other contracting party cannot
> be made to suffer for neglect of that duty.

*Id.* (internal citations omitted); *see also Rory v. Cont'l Ins. Co.*, 703 N.W. 2d 23, 42 n.82 (Mich.

2005); *Lash v. Allstate Ins. Co.*, 532 N.W. 2d 869, 872 (Mich, Ct. App. 1995) (holding that an

insurance contract can be rescinded due to an intentional *or* innocent misrepresentation).

In *Jones v. Allstate Life Insurance Co.*, No. 93-1102, 1994 WL 28575, at *1 (6th Cir. Jan 31,

1994) (unpublished disposition), this court reached a similar conclusion. *Jones* involved an

insurance agent who "read questions from the insurance application out loud [to the applicants] and

filled in the answers herself." *Id.* at *2. The agent then "handed the completed form to Mr. and Mrs.

Jones and asked them to sign it." *Id.* Mrs. Jones said that "they did so without reading it and that

they were not given a copy when they left the office."[4] *Id.* During the meeting, the agent failed to

ask Mr. Jones his height and weight, yet the completed application contained incorrect data in

---

[4]A copy of the application was incorporated into the policy documents eventually received
by the Joneses.

answer to each question. The insured decedent's wife suggested that the agent "must have made the data up in order to bring Mr. Jones within Allstate's risk limits."[5] *Id.*

Despite plaintiff's claim that "neither she nor her husband made any oral misstatement" to the agent regarding Mr. Jones' weight, this court held that "both Mr. and Mrs. Jones signed the application and declared, in doing so, that the representations contained in the application were truthful to the best of their knowledge." *Id.* at *4. As a result, the information contained in the application was imputed to the applicants. *Id.*; *see also Clark v. John Hancock Mut. Life Ins. Co.*, 447 N.W. 2d 783, 784 (Mich. Ct. App. 1989) (holding that life insurance applicant who misunderstood oral questions and then signed the insurance questionnaire without reading it "made a false representation on the application").

Huda attempts to distinguish his case on the basis that Integon never provided him with the second page of the application, which requested that he "[l]ist all persons of eligible driving age or permit age." (ROA at 338.) However, it is undisputed that Huda saw page three, which contains the "Undisclosed Driver" section, including the statement that all drivers are listed, although he declined to sign this section. More important, Huda signed the fifth and final page containing the "Applicant's Certification." (*Id.* at 341.) In that section, Huda certified that "all answers to all

---

[5]Other allegations supported this hypothesis. According to Mrs. Jones, when the agent asked if Mr. Jones had smoked in the past twelve months he answered, truthfully "that he had smoked in the past twelve months, but had not smoked since July." *Jones v. Allstate Life Ins. Co.*, 1994 WL 28575, at *1 (6th Cir. Jan 31, 1994) (unpublished disposition). The agent said she "would write 'no' in response to this question." *Id.* Further, in the months before her interaction with the Joneses, the agent in question received an "advance notice of termination" due to insufficient sales and later "felt pressured to increase her sales and . . . ultimately quit her job with Allstate due, in part, to this pressure." *Id.* at *2.

questions in this application are true and correct" and "that ALL persons of eligible driving age or permit age who live with me, as well as reside in my household, are shown above." (*Id.*) Despite signing this section, Huda does not claim to have mentioned, or attempted to obtain insurance for, Huda, Jr. Therefore, we do not see the significance of Huda's failure to receive page two. The district court correctly concluded that as a matter law Huda made a material misrepresentation when providing and confirming information in his application for auto insurance with Integon.[6]

Huda, however, argues that Integon should not be permitted to void the policy even if the application contained a material misrepresentation. First, he claims that the "lack of signature [in the 'Undisclosed Driver' section] should have prompted Integon to reject the Application, or, at a minimum, require an explanation." (Appellant's Br. at 12.) According to Huda, Integon's failure to do so amounted to a unilateral mistake, which was not sufficient to modify the policy to reincorporate the "Undisclosed Driver" section. Further, because Integon did not seek an explanation, Huda claims the company waived its right to enforce the "Undisclosed Driver" section.

Huda's failure to sign the "Undisclosed Driver" section does not, however, invalidate the remainder of the contract or require a modification of the contract in order for Integon to invoke its power to void the contract under the "Certification" section signed by Huda. That section separately

---

[6]Though it is not disputed here, Huda's misrepresentation was material because, had Integon known Huda had a seventeen-year-old son in the house, the premium it charged for Huda's auto policy would have increased by more than 100 percent. (*See* ROA at 264.) *See also Old Line Ins. Co. of Am. v. Garcia*, 411 F.3d 605, 611 (6th Cir. 2005) ("A misrepresentation is material if the insurer would have charged a higher premium or not accepted the risk had it known the true facts."); *Montgomery v. Fidelity & Guar. Life Ins. Co.*, 713 N.W. 2d 801, 804 (Mich. Ct. App. 2005) (explaining that "a misrepresentation on an insurance application is material if, given the correct information, the insurer would have rejected the risk or charged an increased premium").

provides that all persons of driving or permit age are listed in the application, that the insured will continue to advise Integon of household members of driving age, and that Integon may declare the policy null and void if the insured does not comply with these requirements. Additionally, because "conduct that does not express any intent to relinquish a known right is not a waiver, and a waiver cannot be inferred by mere silence," Integon's action (or inaction) in failing to require that Huda sign the "Undisclosed Driver" section cannot be a waiver of the rights retained by the "Certification" section. *See Moore v. First Sec. Cas. Co.*, 568 N.W.2d 841, 844 (Mich. Ct. App. 1997).

Huda also argues that the doctrine of estoppel applies because: 1) Integon induced Huda to believe Integon would provide coverage; 2) Huda justifiably relied on this belief; and 3) Huda was prejudiced as a result of that reliance. *See, e.g.*, *Conagra, Inc. v. Farmers State Bank*, 602 N.W. 2d 390, 405 (Mich. Ct. App. 1998) (outlining the elements of an equitable estoppel claim). Huda alleges that "had Integon refused coverage because the applicable section was not signed, Huda would have disclosed the other drivers in the family or procured other insurance." (Appellant's Br. at 16-17.)

Huda's equitable estoppel argument, like his waiver argument, fails to account for his endorsement of the "Applicant's Certification," through which he certified that all persons of eligible driving or permit age in the household were shown in the application. Having signed this "Certification" Huda cannot have justifiably relied on Integon's issuance of the policy as an acceptance of the risk Huda failed to disclose. Huda could only rely on Integon's provision of the coverage for which he applied. That coverage clearly reserved the right to void the policy under these circumstances.

Finally, Huda claims that Integon should be estopped from avoiding the policy because it "knew, or in the exercise of reasonable diligence, should have known that there were other eligible drivers in Huda's household." (Appellant's Br. at 11.) According to Huda, the homeowners policy he provided to Integon – which listed his wife, Kishwar Huda, as a named insured – effectively put the company on notice of other drivers.

Huda's argument is based on a series of Michigan cases in which the court of appeals held that once an insurer identifies a material misrepresentation "the critical issue necessarily becomes whether the fraud could have been ascertained easily by the insurer at the time the contract of insurance was entered into." *Farmers Ins. Exch. v. Anderson*, 520 N.W. 2d 686, 689 (Mich. Ct. App. 1994). The court created this exception because it thought "it unwise to permit an insurer to deny coverage on the basis of fraud after it has collected premiums, when it easily could have ascertained the fraud . . . ." *Id.*; *see also Lake States Ins. Co.*, 586 N.W. 2d at 116 (noting that since it was clear the defendant made misrepresentations in her application, the issue was whether the misrepresentations could have been "ascertained easily" by Lake States).[7]

---

[7]The doctrine's origins are contained in *Keys v. Pace*, 99 N.W. 2d 547, 552-53 (Mich. Ct. App. 1959), which explained,

> The short answer to the arguments of waiver and estoppel is that a litigant cannot be held estopped to assert a defense, or to have waived his right thereto, because of facts he does not know, unless, as a matter of judicial policy, we are ready to say he 'should' know them. This we can always do, of course, but there is nothing before us as a matter of fact or of sound policy, to warrant imposition of such knowledge. This is not to say, of course, that one may wilfully close his eyes to that which others clearly see. But nothing of the sort is here before us. In fact, when actual knowledge was gained, the insurer was not slow to act, cancelling the policy *ab initio* and withdrawing its legal representation of the insured. Such action was well justified.

Assuming a person's coverage under a homeowners policy means that the person is of driving age, Huda's provision of an insurance policy with his *wife's* name does not mean that Integon knew or should have known that Huda had a *son* of driving age. Huda essentially argues that his failure to inform Integon about one driver in his household is excused by his failure to inform Integon about *another* driver and his provision of documentation indicating the existence of that driver. While Huda points to a clue that could have led Integon to investigate Mrs. Huda's presence in the Huda household, he provides no indication of how the company would have had any knowledge of the existence of Huda, Jr.

In *Farmers Insurance Exchange v. Anderson*, 520 N.W. 2d 686 (Mich. Ct. App. 1994), the insurance applicant failed to mention her son would be driving the car. The Michigan Court of Appeals held that because the son's name was "nowhere to be found on the application for insurance . . . the trial court properly concluded that it would have been virtually impossible for Farmers to know that it should obtain [the son's] driving record, because it had no reason to believe that he would be operating the subject vehicle." *Id.* at 689; *see also Manier v. MIC Gen. Ins. Corp.*, 760 N.W. 2d 293, 296 (Mich. Ct. App. 2008) (concluding that defendant insurance company could not have "easily ascertained" the insured party's misrepresentation that her son lived with her). Similarly, in this case, Huda's failure to mention Huda, Jr. anywhere on the application for insurance is not overcome by his submission of documentation with Mrs. Huda's name on it.

**B. Ambiguity**

Huda also claims that a portion of the insurance application – which is part of the overall insurance contract – is ambiguous, and that we must interpret the ambiguous provision in favor of

the insured and strictly against the insurer. *Taylor v. Blue Cross/Blue Shield of Mich.*, 517 N.W. 2d

864, 868 (Mich. Ct. App. 1994).

The asserted ambiguity results from a comparison of the second and fourth paragraphs of the

"Undisclosed Driver" section.

> The undersigned further agrees that this endorsement will serve as a rejection of all Coverages, *which are not required by Michigan law*, while any vehicle covered under this policy is being driven, operated, maintained, manipulated, serviced, or used in any manner by an unlisted driver who resides in the named insured's household.

> * * *

> The undersigned agrees that this policy may be rescinded and declared void if this application contains any false information or if any information that would alter the Company's exposure is omitted or misrepresented. [Emphasis added]

(ROA at 339.) Huda argues that read together these clauses are ambiguous and contradictory

because the second paragraph (the rejection clause) purports to preserve no-fault coverage under

these circumstances because no-fault coverage is a coverage "required by Michigan law."[8] Having

preserved the coverage under the rejection clause, the contract should not be read to void the

coverage under the fourth paragraph (the rescission clause). In reply, Integon claims that the

reference to coverage "required by Michigan law" refers to coverages that are mandatory even when

---

[8]M.C.L. 500.3101 provides that "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance."

13

the insured party misrepresented facts in his or her application – namely, liability insurance as described in M.C.L. 257.520(f).[9]

We first observe that the clauses upon which Huda relies to create an ambiguity appear in the very section Huda declined to sign. In any event, applying Michigan law, we conclude that while the provisions may appear to conflict, Huda has not established that the contract should be interpreted to require coverage. Michigan courts construe insurance contracts applying the same principles that apply to contracts in general, seeking to honor the intent of the parties, as expressed in the language of the contract. *Royal Prop. Group, LLC v Prime Ins. Syndicate, Inc.*, 706 N.W.2d 426 (Mich. Ct. App. 2005). "[A]n insurance contract should be read as a whole and meaning should be given to all terms." *Id.* at 432 (citing *Wilke v Auto-Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003)). So read, the rejection and rescission clauses serve two distinct functions. The rejection clause denies coverages not required by Michigan law when an unlisted household resident uses the

---

[9]M.C.L. 257.520 provides, *inter alia*:

(f) Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:

(1) The liability of the insurance carrier with respect to the insurance required by this chapter shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy, and except as hereinafter provided, no fraud, misrepresentation, assumption of liability or other act of the insured in obtaining or retaining such policy, or in adjusting a claim under such policy, and no failure of the insured to give any notice, forward any paper or otherwise cooperate with the insurance carrier, shall constitute a defense as against such judgment creditor.

insured vehicle. The rescission clause voids the entire policy if the insured omits or misrepresents information in the policy application that affects the company's exposure. While a single event may implicate both clauses (e.g. an accident that occurs while the car is driven by an unlisted resident driver whose omission from the application also altered Integon's exposure), the two paragraphs address different concerns.[10]

Here, because the presence in the household of a driver of Huda, Jr.'s age altered Integon's exposure, the rescission clause gave Integon the right to void the policy *ab initio*. However, had an undisclosed driver whose presence in the household did not alter Integon's exposure been driving when the accident occurred, the rescission clause would not be applicable. Read as a whole, the application and policy clearly required Huda to inform Integon of all persons of eligible driving age living in his household or risk Integon rescinding and voiding the policy *ab initio*.

### III. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's grant of summary judgment to defendant Integon.

---

[10]Because our decision does not depend on Integon's narrow reading of the "not required by Michigan law" language, we need not address whether that interpretation is correct.